191 So.2d 830 (1966)
Catherine T. PENDERGRAFT
v.
STATE of Mississippi.
Nos. 44106, 44170.
Supreme Court of Mississippi.
November 7, 1966.
*832 No. 44106: E. Hugh Cunningham, Jr., Barnett, Montgomery, McClintock & Cunningham, Jackson, for appellant.
No. 44170: James B. Tucker, W.D. Kendall, John R. Poole, Jackson, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
PATTERSON, Justice:
This is an appeal from a judgment of the Circuit Court of the First Judicial District of Hinds County wherein the appellant, Catherine T. Pendergraft, was convicted of the murder of Ralph N. Pendergraft, her husband, and sentenced to life imprisonment in the state penitentiary. From this conviction and judgment she appeals.
There are eleven assignments of error enumerated by the appellant and urged for reversal of the cause. Since we reverse and remand the case for a new trial, we designate only those assignments of error which depict errors on the record so prejudicial to the defendant's right to a fair trial as to warrant reversal of the cause or which, albeit advisory, are likely to recur on retrial. We refrain from any comment upon the evidence, as there must be a new trial, other than that which is essential to this decision.
The assignments of error in the order argued are:
1. The trial court committed reversible error in instructing the appellant not to discuss her case with her attorney during a two-hour interval between trial sessions.
2. The trial court erred in granting Instruction No. 5 for the State.
3. The trial court erred in granting Instruction No. 4 for the State.
4. The trial court erred in admitting in evidence the two wills of deceased over objection of the appellant.
5. The trial court committed reversible error in overruling objections of the defendant and in admitting in evidence the exhibits confiscated by officers from a search of appellant's home.
We are of the opinion that the first assignment of error which is directed to the action of the trial judge in instructing the defendant not to discuss the case with her attorney and advising the attorney of such instruction so that it became applicable to him, is an invasion of a constitutional right of the defendant so basic and fundamental that prejudicial error will be presumed therefrom, and because thereof the defendant was deprived of a fair trial in contemplation of law which necessitates a reversal and new trial of the cause.
The posture of the case at the time of the court's admonishment, hereinafter set out, was that the trial had been in progress for four days, including night sessions, when it became necessary for the court to recess at which time the court instructed the defendant and her attorney as follows:
"BY THE COURT:
"Let the record show that the Court declared a recess at 5:30, P.M., at the conclusion of the defendant's direct examination, the recess to terminate at 7:30, P.M. That the Court instructed the witness (defendant) not to discuss the case with her attorney or anyone else during said recess *833 period, and also advised the attorney of the Court's instruction.
"BY MR. CUNNINGHAM:
"Now comes the defendant and objects to the action of the trial court in instructing defendant not to discuss this case with her attorneys during the two-hour recess, as it is denying to her her constitutional rights to confer with her attorneys concerning her case for which she is now on trial.
"BY THE COURT:
"The Court overrules the objection."
The Sixth Amendment to the United States Constitution provides in part as follows:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, * * * and to have the Assistance of Counsel for his defence.
Mississippi Constitution, article 3, section 26 (1890) is to the same effect.
This brings us to the critical question raised by this assignment of error. Did the trial court's instruction to the defendant and to her attorney not to converse during a two-hour recess of the court, immediately following the defendant's direct testimony in her own behalf, violate the defendant's constitutional right to the assistance of counsel as provided by the above-quoted Sixth Amendment to the United States Constitution? 21 Am.Jur.2d Criminal Law section 313 (1965) states the general rule to be:
In construing constitutional provisions relating to the right of an accused person to counsel, most courts have expressed the view that the right extends to every stage of the prosecution. And it is said that the right to assistance in preparing for trial is equal to the right to assistance during the trial itself. Accordingly, in addition to the right to representation during the course of his trial, an accused is generally entitled to be assisted by counsel * * * 21 Am.Jur.2d at 339-340.
It may be safely said that at this time in our jurisprudence there is no question of constitutional law more firmly established than the oft-enunciated principle that in the trial of criminal cases in the federal, as well as the state courts, the defendant is entitled to have the guiding hand of counsel at every stage of the proceeding. The trial is, of course, a stage of the proceeding of vital importance to the accused. The right to an attorney extends throughout the trial and to every stage of the proceeding.[1] We need not look to the specific prejudice that resulted to the defendant as the result of the two-hour court-imposed restriction of consultation between the accused and her attorney. This particular phase of the trial is so critical that we do not attempt to envision a particular prejudice such as an overlooked fact, further discussions of strategy, or whether it be merely reassurance to the defendant. We deem it reversible error that the right of consultation granted by the Constitution was denied. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and the more recent decisions of the United States Supreme Court, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) announce the legal rationale that an accused is denied due process under the Fourteenth Amendment to the United States Constitution unless the provisions of the Sixth Amendment are adhered to. Cf. Miranda v. *834 State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
In United States v. Venuto, 182 F.2d 519, 522 (3d Cir.1950), in considering an eighteen-hour court recess in which the defendant and his attorney were not allowed to consult with each other, the court held:
To deprive an accused defendant and his counsel of the right to consult with each other during an eighteen-hour court recess was most certainly deprivation of the defendant's constitutional right to consult counsel at all stages of the proceeding. We can find no justification for imposing a restriction of silence between accused and counsel during a trial recess. We reject the Government contention that defendant and his counsel must prove affirmatively the exact prejudice produced by this injunction in a federal prosecution. Not only would this require them to disclose what would have been privileged communication between attorney and client, but, as stated in Glasser v. United States, supra, 315 U.S. at page 76, 62 S.Ct. at page 467; "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." By restricting the right of consultation between this defendant and his counsel during court recesses, defendant was denied the right to have the assistance of counsel for his defense, as guaranteed by the Sixth Amendment to the Constitution. His objection on this ground and his motion for mistrial directed to the trial court were well founded. Accordingly, the conviction must be reversed and a new trial granted.
The case of Commonwealth v. Werner, 206 Pa.Super. 498, 214 A.2d 276 (1965), which follows Venuto, reiterates the right of a defendant to counsel under the Sixth Amendment, and quotes the language of Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942), which we repeat:
"The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." 214 A.2d at 277-278.
Commonwealth further states in its own opinion the following:
Nor will this court engage in nice calculations as to precisely what the trial judge meant to do or did not mean to do by his statement. An admonition "I don't want him to discuss this testimony with you", given by a judge to an officer of the court, is not cured by the statement, "But you may ask him about witnesses * * * I did not mean to cut off communication between you." It is not the function of the trial judge to decide what a defendant's defense should be, nor when or how that defense should be planned, nor how much consultation between a defendant and his retained counsel is necessary to adequately cope with changing trial situations. That is the function of counsel. The right to the assistance of that counsel is not a right which exists only from 9 a.m. to 4 p.m. and only in the court room and only concerning certain aspects of the case. The defendant had the right to discuss the entire case, including his own testimony, with his attorney, even after 4 p.m. Discussion of this testimony might have been very important in determining the future course of his defense. An admonition limiting this right is reversible error. 214 A.2d at 278.
As heretofore stated, we are of the opinion the deprivation of the defendant's constitutional right under the Sixth Amendment to consult with her attorney during this two-hour interval constitutes reversible error.
The duty of seeing that the trial is conducted with solicitude for the constitutional *835 rights of the accused rests upon the trial judge. This protecting duty imposes upon him the serious and weighty responsibility of safeguarding such essential rights and does not accord to him, though he has much discretion to see that orderly procedures are followed in the courtroom, the privilege to withdraw from a defendant the right of consultation with counsel during a court recess. See Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); McKenzie v. State, 233 Miss. 216, 101 So.2d 651 (1958); Brooks v. State, 209 Miss. 150, 46 So.2d 94 (1950); and Fisher v. State, 145 Miss. 116, 110 So. 361 (1926) to the effect that where fundamental and constitutional rights are ignored, due process does not exist, a fair trial cannot be had, and a presumption of prejudice arises from the ignored or denied right.
The assignment of error hereinabove discussed requires a reversal of the case, but since there is a likelihood that some of the instructions obtained by the State, presently urged as being erroneous, will be used on retrial, we are of the opinion that comment and decision as to their correctness would be appropriate.
The first instruction is as follows:
The Court instructs the jury for the State that while it is true in this case as in all criminal cases, the Defendant is presumed to be innocent until proven guilty, and that this presumption of innocence goes with the Defendant throughout the trial until overcome by competent testimony and the Defendant is proven guilty; and that while it is further true, that the burden of proof, as in all criminal cases, is upon the State to satisfy the minds of the jury as to the guilt of the Defendant from the evidence beyond a reasonable doubt; yet the Court now says to you that this presumption of innocence, which the law throws around the Defendant, as a shield and safeguard, is not intended to shield anyone from punishment who is in fact guilty, but that it is simply a humane provision of law to guard against the conviction of an innocent person; and the Court further says to you positively that if you believe from the evidence in this case beyond a reasonable doubt that the Defendant is guilty as charged in the indictment, then it is your sworn duty to say guilty by your verdict.
This instruction is essentially the same as that held to be erroneous in Hall v. State, 250 Miss. 253, 268, 165 So.2d 345, 352 (1964), wherein the court, using the language found in Smith v. State, 161 Miss. 430, 137 So. 96 (1931), in discussing a similar situation, stated:
The lay mind, in reading it (the instruction), might get the idea that the jury, in making up their verdict, were not to take into consideration the burden of proof and the presumption of innocence. At first glance, the instruction is calculated to convey that impression. We cannot say that it was error for the court to give this instruction, but we think that on another trial it should be left out of the case. It is too illusive for the ordinary juror to get hold of and understand its meaning. The instruction is too smart.
In McLaurin v. State, 205 Miss. 554, 37 So.2d 8 (1948), the same instruction was criticized by the court for the reasons stated in Hall and Smith, supra. We again condemn this instruction as being so adroit in law as to be confusing to the lay mind and a source of consternation to the legal mind. It should not be used, and we hold that the court erred in granting the same.
The next instruction complained of by the defendant and assigned as error is:
The Court instructs the jury for the State that you are the sole judges of the credibility of the witnesses who testify in this case, and in determining what weight you should give the testimony of any witness, you have the rights to consider their demeanor upon the witness stand; what interest, if any, they have *836 in the results of the trial, if it has been shown by the evidence they have any, and all other facts and circumstances in the evidence in this case.
The defendant testified in her own behalf. She was the only witness to the fatal encounter between her deceased husband and herself though there were other witnesses to different facets of the case. One of the other aspects of the testimony was the wealth of the deceased. Under these circumstances we are of the opinion that the instruction was erroneously granted as it unduly focused attention upon the defendant's interest in the case, first, the normal interest that a defendant would have in a criminal case in achieving a verdict of innocence, and next it emphasized, in the light of the testimony of the State, an additional interest the defendant might have in the case, the inheritance of wealth. In Hall v. State, 250 Miss. 253, 265-266, 165 So.2d 345, 351 (1964) this Court, in considering a like instruction relating to a defendant's interest, quoted with approval the language found in Buckley v. State, 62 Miss. 705 (1885) as follows:
"A defendant has the right to submit his testimony to the jury to be judged by it, uninfluenced by any suggestions of its probable falsity or an authorization to the jury to throw it aside as unworthy of belief because of the strong temptation to the defendant to swear falsely. There is little danger that juries will be unduly influenced by the testimony of defendants in criminal cases."
See also Jones v. State, 154 Miss. 640, 122 So. 760 (1929); Pigott v. State, 107 Miss. 552, 65 So. 583 (1914); Gaines v. State, 48 So. 182 (Miss. 1909); Townsend v. State, 12 So. 209 (Miss. 1892); and Woods v. State, 67 Miss. 575, 7 So. 495 (1890). In view of these authorities we are of the opinion the granting of this instruction was error.
For the reasons stated we condemn the use of these two instructions and think that it might be appropriate, due to our concern over the reversal of criminal cases as the result of improper instructions, to quote the propitious language of Chief Justice Whitfield in McDonald v. State, 78 Miss. 369, 376, 29 So. 171 (1900), wherein he stated:
We have often said, and we again repeat it, that if district attorneys would not attempt to charge defendants into the penitentiary by paring away, by instructions strained to the last point of legal tension, the rights of the defendants, they would not only secure as many convictions, but convictions not requiring to be set aside. We cannot too earnestly commend to district attorneys the wisdom of this course. Is it not far wiser to state the law in a few  a very few  instructions, stating the law clearly, and surely within the defendant's rights, than to attempt the solution of the problem how near the state may go, in its instructions, to fatal error, without erring? Surely it is, and this instruction is a striking example of the unwisdom of the latter course.
We are acutely aware of the vantage point from which we review cases, that of hindsight, and that we are removed from the tension of courtroom adversary proceedings. We are also cognizant of the fact that a trial attorney never knows when he has made out his case, what weight, or lack of consideration, will be given the evidence by the court or jury until their judgment or verdict is returned, and that in this realm of the unknown he must strengthen his client's position by the use of every legal maneuver and stratagem available, but does he not gamble dangerously and perhaps needlessly by using instructions heretofore criticized or condemned by this Court? We are of the opinion that he does, and so that these instructions might not again be used in this or other criminal cases we forthrightly condemn them.
*837 The next plaint of the defendant is that the court erred in admitting into evidence the two wills of deceased over her objection. One of these wills was dated July 9, 1965, and was filed for probate August 31, 1965. The will, which had been probated, was admissible in evidence, as it tended to establish a mercenary motive or hope of advantage on the part of the accused from the death of the decedent which the jury had a right to consider. 40 C.J.S. Homicide § 232, at p. 1162 (1944) and Willis v. State, 37 Ala.App. 185, 66 So.2d 753 (1953). The other will, introduced over objection, was dated November 2, 1964, and remained in the office of the attorney who prepared it, was never filed for probate, and in fact was revoked by the latter will of July 9, 1965. We are of the opinion the introduction of this will was error as its only significance in the case was that of bringing to the jury's attention a collateral issue, that the will was changed as the result of wrongdoing or undue influence on the part of the accused, which in all probability was likely to prejudice the jury to the detriment of the accused. The issue was one of murder and not of undue influence in the changing of a will. The evidence should have been restricted to the former. Buchanan v. State, 204 Miss. 304, 37 So.2d 318 (1948) and Coleman v. State, 198 Miss. 519, 23 So.2d 404 (1945). Cf. Ward v. State, 203 Miss. 876, 34 So.2d 720 (1948).
The defendant objected to and assigns as error here the introduction into evidence of certain articles found in the home of the defendant by police officers. Several of these articles, a T-shirt, six bath towels, one small towel, one wash rag, a blue bathrobe, lady's pajama pants, and a pink bedspread, were found in a clothes dryer in the utility room of the home. Chemical tests on these items disclosed bloodstains thereon. A bloodstained bottle of whiskey and a bloody drinking glass were found in the bar of the home which was reached by opening a louvered door in the family room. A sponge, with a bloodstain upon it, was found in one of the bathrooms and a "band aid" was obtained from under the body of the deceased. All of the above articles were obtained by police officers on the night of August 26, 1965, without benefit of a search warrant and prior to the arrest of the defendant, the arrest not being made until the results of an autopsy were disclosed the following day. The appellant contends the officers were without probable cause to arrest her and being without search warrant the search was illegal and the fruits thereof were not admissible in evidence. We are of the opinion that the question of "probable cause" at the time of the initial search of the defendant's home is one for judicial determination.
The officers were lawfully upon the premises in response to a police directive. Upon entering the home they conversed briefly with the physician of the accused and then went into the family room where they saw the nude body of the deceased lying on the floor on its back covered with a bedspread. Their investigation of the body revealed it to be cold and stiff, with seventeen separate wounds thereon. In turning the body during the investigation a "band aid" was found on the floor beneath it. There was no blood or bloodstains beneath the body and the body itself appeared to have been cleaned of blood with the exception of that which was found under the fingernails and on the bottom of the feet. An investigation of the premises, the house, disclosed traces of blood on the floor of the kitchen, in the hallway, and in a chair in the family room. Blood was found on the doorway to the bar, and when this was opened, the bloody bottle and glass above-mentioned were found. Further investigation led to the utility room of the home where the officers noticed the clothes drying machine to be warm, and upon opening it found the clothing and cloths above-mentioned. The sponge was found in a bathroom and the pillow slip was found on one of the beds in the home.
*838 An officer may testify to that which he learns through one of his senses provided he is not trespassing at the time he makes the discovery. Rodgers, Search and Seizure in Mississippi, 28 Miss.L.J. 20 (1956) and the authorities therein cited. Being lawfully upon the premises the officers could testify to that which came under their observation, the band aid, the pillow slip, and the spread covering the body. The greater question is whether they had the right in the course of their investigation to open the cabinet in the family room and to open the drying machine without search warrant and without arrest. We are of the opinion that this question must be resolved by a judicial determination of whether there was probable cause for the arrest of the appellant contemporaneous with the search. Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Admittedly the officers did not make an arrest at the time, but their failure to make an arrest does not foreclose a judicial determination of probable cause, as this is a proper function of the trial court. Millette v. State, 167 Miss. 172, 148 So. 788 (1933); Mapp v. State, 148 Miss. 739, 114 So. 825 (1927); Holmes v. State, 146 Miss. 351, 111 So. 860 (1927); Ingram v. State, 146 Miss. 303, 111 So. 362 (1927); and McNutt v. State, 143 Miss. 347, 108 So. 721 (1926). In McNutt we stated:
What is probable cause and the sufficiency of the evidence to constitute probable cause are judicial questions to be determined by the court, and, if in fact the information obtained by the officer is insufficient to constitute probable cause, a search will be illegal, although the sheriff or constable might think it sufficient. They are not the final judges. The facts must amount to probable cause, and the court will pass judicially upon whether the information amounts to probable cause or not in each case coming before it. 108 So. at 722.
See also Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) wherein that court stated:
We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the "fundamental criteria" laid down by the Fourth Amendment and in opinions of this Court applying that Amendment. Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees. * * * 374 U.S. at 33, 83 S.Ct. at 1630, 10 L.Ed.2d at 738.
However, this decision does not preclude the states from developing workable rules "governing arrests, searches and seizures to meet `the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures * *" Ker, supra, 374 U.S. at 34, 83 S.Ct. at 1630, 10 L.Ed.2d at 738. If a determination be made that probable cause existed for the arrest of the accused on the night of August 26, 1965, then the investigation and search of the premises would not be unreasonable under the circumstances as the officers were lawfully on the premises and the search was incident to arrest. See Jefferson v. State, 207 Miss. 576, 42 So.2d 772 (1949) and Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) wherein it is stated:
The opinions of this Court have clearly recognized that the search incident to arrest may, under appropriate circumstances, extend beyond the person of the one arrested to include the premises under his immediate control. 331 U.S. at 151, 67 S.Ct. at 1101.
We are of the opinion that a judicial determination should be made in the absence of the jury as to whether probable cause existed *839 for the arrest of the defendant at the time the search was made on the night of August 26, 1965.
The appellant complains, in connection with an assignment of error not necessary to this opinion, that the reservation of rulings by the trial court was prejudicial to the defendant. We do not pass upon the assignment of error, but feel it proper, under the circumstances, to repeat that which was stated in Warren v. State, 174 Miss. 63, 164 So. 234 (1935) by Justice Griffith as follows:
In trials before the chancellor, or before the circuit judge, without a jury, the practice of reserving rulings on objections to evidence is permissible because the judge, trained in such matters and skilled in legal discrimination, is able upon final decision to put out of his mind that part of the testimony which he has heard, but which upon a mature examination of the legal questions in respect thereto is found to be inadmissible as evidence; but an untrained jury cannot so well do this. Therefore, the proper practice in jury trials is that the judge shall rule positively one way or the other when the evidence is offered and the objection thereto is made. 64 C.J. p. 220, § 232(2). This, however, is not to be laid down as an inflexible rule, there being several appropriate circumstances for its reasonable relaxation. But when it is not adhered to, and harmfully objectionable testimony is allowed to get to the jury under reserved rulings, and in such a manner and to such an extent that we cannot safely say the jury has not been materially influenced thereby, we must reverse, even though the court at some later stage of the trial may have instructed the jury to disregard the illegal evidence. Compare Lamar v. State, 64 Miss. 687, 2 So. 12; Green v. State, 97 Miss. 834, 53 So. 415. 164 So. at 235-236.
The Court is reluctant to reverse a criminal case which has been considered and passed upon by a jury. However, the defendant is entitled to a trial in accord with the standards proscribed by the federal and state constitutions, one of which is the right to counsel, and being deprived thereof as hereinabove set out, the case must be reversed and remanded for a new trial.

CAUSE NO. 44,170
This cause has been consolidated with Cause No. 44,106 for the purpose of argument only. The question raised by this motion is that while Cause No. 44,106 was pending and prior to the filing of the record a three-judge federal panel ruled that the Alabama statute excluding women from jury service was a denial of equal protection and due process as guaranteed by the Fourteenth Amendment to the United States Constitution. Appellant then filed her petition in the lower court to vacate the judgment of conviction due to this change in the law, claiming that the Mississippi statute excluding women from jury service was unconstitutional. This motion was overruled by the court. We are of the opinion that this question has been disposed of by the case of State v. Hall, 187 So.2d 861 (Miss. 1966), and that the court did not err in overruling the appellant's motion, as the cited case holds directly to the contrary of that contended by the appellant.
Reversed and remanded.
GILLESPIE, P.J., and INZER, SMITH, and ROBERTSON, JJ., concur.
NOTES
[1] We do not mean by this that the accused and his attorney have the right to consult indiscriminately without permission of court while the accused is on the witness stand or that the right to consult with counsel supersedes orderly courtroom decorum and procedure. We do say that during recesses of the trial the accused and counsel have a constitutional right to confer.