213 So.2d 560 (1968)
Mrs. Catherine T. PENDERGRAFT
v.
STATE of Mississippi.
No. 44873.
Supreme Court of Mississippi.
July 8, 1968.
Rehearing Denied September 16, 1968.
*561 W.E. Gore, Jr., W.D. Kendall, Jackson, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
ROBERTSON, Justice.
The appellant, Catherine T. Pendergraft, was convicted of the murder of her husband, Ralph N. Pendergraft, in the Circuit Court of the First Judicial District of Hinds County, Mississippi, and was sentenced to life imprisonment in the State Penitentiary. This is the second appearance of this case before this Court, the first conviction having been reversed and the cause remanded for a new trial in an opinion reported in 191 So.2d 830 (Miss. 1966).
On the afternoon of August 26, 1965, Pendergraft suffered seventeen stab wounds while alone with his wife, the appellant, in their home at 374 Rollingwood Drive, Jackson, Mississippi. About 7:30 that night, the appellant telephoned Grady Tucker, her former brother-in-law, and asked him and his wife, Mrs. Marie Tucker, to come to her home immediately; that something had happened to Ralph. Dr. William B. Tumlinson was called by Mrs. Marie Tucker, and arrived at the Pendergraft home shortly after the Tuckers. Dr. Tumlinson called Dr. Thomas M. Davis, the Hinds County Coroner, and he in turn called the Jackson Police Department.
In response to this call, Detectives James L. Black and S.M. Magee were dispatched to the Pendergraft home. Ralph N. Pendergraft was found lying on his back, nude, in the family room. Rigor mortis had set in and his body was cold and stiff. Dr. Tumlinson, Dr. Davis and the two detectives examined the body and found that he had seventeen stab wounds on his body not including cuts in the webbing between his fingers and superficial cuts and scratches around the outside corners of his eyes. These wounds ranged from six puncture type wounds behind the right ear, downward to a gaping wound in his right chest, one in his right abdomen, four recent cuts just above his right knee, and numerous other cuts in the palms of his hands, the webbing between the fingers and on the outside of the fingers. All of these appeared to be shallow cuts except the ones in his chest and abdomen. His body had been completely cleaned, and there was no evidence of blood except on the sole of his right foot, on the bottom of the left big toe and around the cuticles of his fingernails. Even the fingernails themselves had been cleaned.
The detectives found a bloodstain on the doorknob of a louvered door opening from the family room to an enclosed bar. On the counter of the bar they found a partially filled bottle of scotch whiskey and a whiskey glass, both of which had bloodstains on them. The kitchen adjoins the family room, and on one counter of the kitchen the detectives found a butcher knife with bloodstains on the stainless steel blade, and on another counter near the sink they found a butcher knife that had been washed and was still wet. They found a pillowslip with a bloodstain on it on a bed in a small bedroom connected with the breakfast room. When the body was turned over, a bandaid was found underneath the body. All of these items, together with the pink bedspread which partially covered the body, were received as exhibits. All of these items were recovered on the night of August 26, while the detectives were investigating the killing and before the appellant was formally arrested on August 27.
The clothes drier was running when Grady Tucker arrived, and at the request of appellant, he turned the clothes drier off by unplugging it. In the course of their investigation, the detectives discovered that the clothes drier was very warm and had items of clothing and towels therein.
The next day, August 27, Detective Black swore out an affidavit before Judge *562 James L. Spencer, explained to him what the case was all about and what the detectives had discovered, whereupon Judge Spencer, a lawyer, whose official position was that of Municipal Judge and Ex-Officio Justice of the Peace, issued a search warrant and the detectives returned to the Pendergraft home and picked up all items in the clothes drier. The trial judge ruled that the affidavit and search warrant were faulty and refused to allow the contents of the drier to be introduced in evidence.
An autopsy was performed on the body of Pendergraft on August 27 by Dr. William P. Featherston, with Dr. Tommy Davis, the coroner, in attendance. As a result of the autopsy, the cause of death was established as the cutting of the internal mammary artery by the stab wound in the chest. The testimony of Doctors Featherston and Davis was that Pendergraft bled to death, and that he would have died in about an hour after the infliction of the wound.
The appellant contends that the trial court committed ten errors, as follows:
"1. The Court erred in allowing certain objects, seized on the night of August 26, 1965, as a result of an unlawful search without a search warrant and prior to the arrest of the Appellant, to be introduced in evidence.
"2. The Court erred in admitting into evidence certain objects taken by Detectives Black and Magee in the course of a search on August 26, 1965, which articles were not in the immediate surroundings or immediate vicinity of the body of Ralph T. Pendergraft.
"3. The Court erred in allowing the witness, Featherston, to testify as to the results of an autopsy when the statutory requirements had not been followed.
"4. The Trial Court erred in allowing the witnesses, Marie Tucker and George Gibson, to testify, over the objection of the Appellant, to prior difficulties and the details of said prior difficulties between the Defendant and the Deceased, Ralph Pendergraft.
"5. The Court erred in admitting into evidence the unprobated Will of Ralph Pendergraft, dated July 9, 1965.
"6. The Court erred in admitting into evidence one of the knives, Exhibit 15, found in the kitchen, which did not contain bloodstains, for the reason that the State did not prove there was any connection between this knife and the sharp instrument which caused the death of Pendergraft.
"7. The Trial Court erred in allowing the witness, George Gibson, to testify in rebuttal, in an attempt to impeach the testimony of the Appellant, when she denied slapping the Deceased in the mouth some thirty days prior to his death.
"8. The Court erred in refusing to grant Instruction No. 15 and direct the jury to render a verdict of acquittal of the Appellant.
"9. The Trial Court erred in overruling Appellant's motion to quash the indictment and the motion to quash the venire, because of the total exclusion of women from serving as grand or petit jurors, by virtue of the laws of the State of Mississippi, in violation of the constitutional rights of the Appellant.
"10. The Trial Court committed reversible error in threatening one of the attorneys for the Defendant with a fine for contempt of Court in the presence of the jury, which actions, on the part of the Court, could have influenced the jury to become hostile to the attorneys representing the Appellant, and, further, hampered attorneys for the Appellant in the defense of a capital crime."
With reference to the objects seized on the night of August 26, 1965, without a search warrant and prior to the arrest of *563 the appellant, we said on the first appearance of this case before us:
"The appellant contends the officers were without probable cause to arrest her and being without search warrant the search was illegal and the fruits thereof were not admissible in evidence. We are of the opinion that the question of `probable cause' at the time of the initial search of the defendant's home is one for judicial determination.
"The officers were lawfully upon the premises in response to a police directive." 191 So.2d at 837.
"The greater question is whether they had the right in the course of their investigation to open the cabinet in the family room and to open the drying machine without search warrant and without arrest. We are of the opinion that this question must be resolved by a judicial determination of whether there was probable cause for the arrest of the appellant contemporaneous with the search." 191 So.2d at 838.
The trial court on the second trial, after outlining the facts in its opinion, found:
"[T]hat the officers had probable cause to believe that a felony had been committed and reasonable grounds to believe that the defendant committed the felony."
We think that the trial judge was entirely correct in his findings. These detectives would have been derelict in their duty if they had not been alert and observant in investigating a death which bore every indication of having been violently inflicted by the only other person present, namely, Mrs. Catherine Pendergraft; they would have been derelict in their duty if they had not followed up every lead they ran across.
There were several telephone conversations between Dr. Tumlinson and the district attorney, between Dr. Davis and the district attorney, and between Detective Black and the district attorney. Dr. Tumlinson testified that he tried to get Mrs. Pendergraft a hospital room that very night but was not able to do so. The doctors, the detectives and other witnesses testified that appellant talked with a thick tongue and appeared to be under the influence of alcohol or drugs; that she was in a precarious mental, physical and emotional condition. It follows quite logically that the only reason the appellant was not arrested that very night was because all parties were concerned about her doubtful condition; there certaintly was probable cause to suspect her. The appellant was alone with her husband in their home when he was fatally wounded and when he was stabbed seventeen times. She never denied that she had done the stabbing; she said that he attacked her and she acted in self-defense.
The items were found and taken from the immediate vicinity of the body or from the rooms adjoining the family room where the body itself was found. These articles were properly admitted into evidence.
The appellant contends that Dr. Featherston should not have been allowed to testify as to the results of an autopsy performed by him when the statutory requirements had not been followed. The thrust of the argument made by the appellant on this assignment of error seems to be that if a copy of the report of the autopsy had been filed with the circuit clerk it would have been available to the accused. The district attorney stated into the record that he personally had promptly furnished a copy to counsel for accused in the first trial and that even though other attorneys represented appellant on the second trial, he had furnished an additional copy to new counsel. The trial judge was correct in construing Sections 7158-04 and 05, Mississippi Code of 1942 Annotated (Supp. 1966) as applying only to the admissibility of the autopsy report in civil cases. *564 It was not the legislative intent and purpose for an accused in a criminal case to have the standing or the right to complain that all technicalities had not been strictly followed in the ordering of an autopsy. The principal purpose of the statute is set forth in Section 7158-02, Mississippi Code of 1942 Annotated (Supp. 1966) in these words:
"An autopsy may be performed, as provided by this act for the purpose of determining the primary and/or contributing cause of death in the interest of public health and in criminal cases."
It would be passing strange if an accused could thwart the main purpose of the statute because of a technicality.
A Kentucky case holds that a corpse is not a possession and that physicians attending the autopsy could give their opinions as to the cause of death even though an inquest might have been illegally held. This was the holding of the court in a civil case. See Streipe v. Hubbuch Bros. & Wellendorf, 233 Ky. 194, 25 S.W.2d 358 (1930).
The appellant next contends that the court erred in allowing the witnesses, Marie Tucker and George Gibson, to testify of prior difficulties and the details of such prior difficulties between the appellant and her husband, and that the court also was in error in allowing the witness George Gibson to testify in rebuttal in an attempt to impeach the testimony of the appellant about the slapping incident.
These prior difficulties occurred within thirty days of the death of the deceased. Even the cases cited by the appellant, namely, Floyd v. State, 166 Miss. 15, 148 So. 226 (1933); Raines v. State, 81 Miss. 489, 33 So. 19 (1902); and Herman v. State, 75 Miss. 340, 22 So. 873 (1898), hold that evidence of prior difficulties occurring close to the date of the commission of the crime is admissible to show motive and intent.
Appellant was charged with the crime of murder and malice aforethought is the single most important element of this offense. Section 2215, Miss. Code of 1942 Ann. (1956). The trial judge did not err in admitting this testimony.
The appellant contends, in her fifth assignment of error, that the trial court erred in admitting into evidence the unprobated will of Ralph N. Pendergraft, dated July 9, 1965. We held in the first appearance of this case before us that this will was properly admitted into evidence. 191 So.2d 830, 837 (Miss. 1966). This will was filed for probate in the office of the Hinds County Chancery Clerk in Jackson, Mississippi, on August 31, 1965. The only reason it was not admitted to probate is because a caveat was filed by the two adult daughters of Ralph Pendergraft by his first marriage. The appellant desired very much for this will to be admitted to probate because its provisions were very liberal and favorable to her; she did not object in any way to its probate.
Counsel for the appellant were very careful to offer into evidence the Decree of December 3, 1965, approving the Family Settlement Agreement which was attached to and made a part of the Decree. Now there was also attached to the Family Settlement Agreement, made a part thereof, and, therefore, constituting a part of the Decree, a copy of this very Last Will and Testament dated July 9, 1965. Counsel for the appellant are, therefore, in the very inconsistent position of having offered into evidence and having persuaded the trial court to accept in evidence the very will that they now object to. We very quickly find that the will of July 9, 1965, was properly admitted into evidence on the application of both the State and the appellant.
The trial court did not err in admitting into evidence the butcher knife with the stainless steel blade found on a rack above the sink in the kitchen which *565 adjoined the family room. This knife had been washed, still had water spots on it and was located in the room adjoining the room where Pendergraft lay dead from a fatal stab wound.
The appellant contends next that the trial court erred in refusing to grant her a peremptory instruction based on what has come to be known as the Weathersby rule. That rule is that, where the charge of murder is based solely on circumstantial evidence, if the defendant's version is reasonable and believable, her testimony must be accepted unless the circumstances and facts contradict defendant's testimony in material particulars. Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933).
It was never denied that appellant inflicted the stab wounds on the deceased. In her sworn testimony she gave three different versions as to what happened on that fateful afternoon, and all three are couched in vague and indefinite language. The record is replete with facts which contradict all of the appellant's versions of how the killing happened. The only defense that she attempted to prove was self-defense. Yet the testimony and physical facts refute that defense at every turn. She had no cuts or scratches on her body, yet she testified that an angry two hundred pound man advanced on her with a butcher knife. She, being deathly afraid of him because he was so strong and she so weak, in some way took the knife away from him without so much as a scratch, and stabbed him seventeen times, not counting the cuts on his hands. Her testimony simply does not hold water as to how the killing happened. The jury was justified in not believing such improbable, illogical and incomprehensible testimony. Under no stretch of the imagination was she entitled to a peremptory instruction.
The contention that the trial court erred in overruling appellant's motion to quash the indictment and the venire because of the total exclusion of women from the grand jury indicting and the petit jury trying the appellant, was specifically ruled on adversely to the appellant in our first opinion. 191 So.2d 830, 839 (Miss. 1966). We said that this question had been disposed of in the case of State v. Hall, 187 So.2d 861 (Miss. 1966). In Hall we said that the power to prescribe the qualifications for jurors is in the legislature and it has the power to make reasonable classifications. The 1968 Mississippi Legislature, we note, has exercised its prerogative and has recently enacted a law permitting women to serve on grand and petit juries. In Mississippi the legislature still enacts the laws, and the courts merely interpret them.
The tenth and last assignment of error is that "The Trial Court committed reversible error in threatening one of the attorneys for the defendant with a fine for contempt of Court in the presence of the jury. * * *"
The trial judge has the duty and responsibility of enforcing proper decorum in the courtroom. His remark was addressed impartially to the prosecution and the defense when he said:
"Now, let me say this to both of you. If either of you makes another remark, it will be fifty dollars. You understand that, both of you?"
No objection was interposed by counsel for appellant to this remark of the Court at the time that it was made. If counsel for the appellant did not see fit to object to it at the trial, they cannot be heard to object on appeal.
The judgment is affirmed.
Affirmed.
GILLESPIE, P.J., and JONES, BRADY and PATTERSON, JJ., concur.