Mrs. Catherine T. **PENDERGRAFT,**
Plaintiff,
v.
Tom D. **COOK, Superintendent, Mississippi State Penitentiary,**
Defendant.
Civ. A. No. 4499.

United States District Court,
S. D. Mississippi,
Jackson Division.
Feb. 23, 1971.
Supplemental Opinion March 2, 1971.

Weaver E. Gore, Jr., Jackson, Miss., for plaintiff.

A. F. Summer, Atty. Gen., Guy Rogers, Asst. Atty. Gen., Jackson, Miss., for defendant.

## OPINION OF THE COURT

RUSSELL, District Judge.

This cause is before the Court for the second time, having been remanded by the Fifth Circuit. Court of Appeals in Cause No. 29229, October 29, 1970, 433 F.2d 969, with directions for this Court to pass on the issue of whether petitioner's state court trial was invalid by reason of the alleged admission of illegal evidence against her in violation of her constitutional rights.

By way of background, petitioner, Mrs. Catherine T. Pendergraft of Jackson, Mississippi, was convicted in the First Judicial District of Hinds County, Mississippi of the murder of her husband, Ralph N. Pendergraft. Her first conviction was reversed by the Mississippi Supreme Court and the cause remanded for a new trial as reflected in Pendergraft v. State, 191 So. 2d 830, rendered November 7, 1966. That court primarily found reversible error in the trial court's denial to petitioner of the right to consult with counsel during a two hour recess. The state appellate court also pointed out other errors, among them that a judicial determination, in the absence of the jury, should have been made as to whether probable cause existed for the arrest of Mrs. Pendergraft at the time a search was made of the residence. In its opinion the Court summarized that Jackson police officers, on the night of August 26, 1965, in the course of their investigation of an obviously violent death, without benefit of a search warrant, and, prior to petitioner's formal arrest the next day following an autopsy, picked up several articles, which were subsequently exhibited in the trial against petitioner. The Court, in relating the facts upon which it found that the officers were lawfully upon the premises, said that the officers conversed briefly with the accused's physician and then went to the family room where the nude body of the deceased lay on the floor covered by a bedspread. Their investigation revealed the body to be cold and stiff with seventeen visible wounds thereon. No blood or blood stains were beneath the body and the body itself appeared to have been cleaned with the exception of blood found under the fingernails and on the bottom of the feet. An investigation of the premises disclosed traces of blood on the floor of the kitchen and in the hallway. Blood was found on the doorway to the

bar adjoining the family room, and a blood stained bottle and glass were found in the bar. Further investigation led to the utility room where the officers noticed the clothes dryer to be warm, and upon opening it found articles of clothing, towels and other items therein. A sponge and pillowslip were found elsewhere in the home. The Court, in finding that the officers were lawfully upon the premises, held that they could testify to that which came under their observation, but that the greater question was whether they had the right in the course of their investigation to open the bar area and to open the dryer without a search warrant and without arrest. The Court further held that the question should have been resolved by a judicial determination of whether there was probable cause for the arrest of petitioner contemporaneous with such a search. The lack of this determination was thus one of the grounds for reversal.

Preceding the second trial and conviction, petitioner filed a motion to suppress certain evidence, contending that various articles were examined and taken by police officers from the Pendergraft residence on the night of August 26, 1965, prior to her arrest the following day, and other articles were seized and impounded on the following day under an illegal search warrant, which warrant had not been placed in evidence in the first trial, and that both searches and seizures were illegal. After a full, evidentiary hearing, the trial judge issued his written opinion on the motion finding that only certain of the articles introduced in the first trial were impounded by police officers on the night of August 26, 1965, and that the remaining articles were seized the next day following the arrest and issuance of a search warrant. As to those articles taken on the night of August 26, 1965, and addressing himself to the ruling of the Mississippi Supreme Court with respect to probable cause, the trial judge, after referring to the testimony of police officers and that of petitioner relat-

ing to the initial investigation on the night of August 26, 1965, found that the officers had probable cause to believe that a felony had been committed and reasonable grounds to believe that petitioner committed the felony. He accordingly overruled that part of the motion relating to the items seized on the night of August 26, 1965, and specified that the following items could be used as evidence by the state: (1) a band aid from underneath the deceased's body; (2) a bottle of scotch and glass with blood stains; (3) two knives obtained in the kitchen; (4) a pillowslip with blood thereon; (5) a yellow sponge found on the floor; and (6) the bedspread covering the deceased's body. As to the search warrant, although it specifically itemized all other articles which were seized under it, the trial judge found that the affidavit on which the search warrant was issued was defective and therefore the search warrant was void. The judge accordingly sustained the motion to suppress as to all evidence seized under the illegal warrant. That evidence, including the items found in the clothes dryer, was not offered at the second trial and is, of course, not an issue here.

As to the second conviction, affirmed by the Mississippi Supreme Court on July 8, 1968, its decision appearing in 213 So.2d 560, and which is under attack here, the Court again related the facts pertaining to the death of Pendergraft. The Court stated that on the afternoon of August 26, 1965, the deceased suffered seventeen stab wounds while alone with his wife, petitioner here, in their home in Jackson, Mississippi. About 7:30 p.m., petitioner telephoned her former brother-in-law, Grady Tucker, asking him and his wife to come to her home immediately as something had happened to Ralph. Mrs. Tucker called Dr. W. B. Tumlinson, petitioner's physician, who arrived at the Pendergraft home shortly after the Tuckers. Dr. Tumlinson called the Hinds County Coroner, who in turn called the Jackson Police Department. Two detectives were dispatched to the home in re-

sponse to this call. They found the nude body, as they had previously testified, covered by a pink bedspread, lying on the floor in the family room. Dr. Tumlinson, the coroner and the detectives examined the wounds which "ranged from six puncture type wounds behind the right ear, downward to a gaping wound in his right chest, one in his right abdomen, four recent cuts just above his right knee, and numerous other cuts in the palms of his hands, the webbing between the fingers and on the outside of the fingers. All of these appeared to be shallow cuts except the ones in his chest and abdomen. His body had been completely cleaned, and there was no evidence of blood except on the sole of his right foot, on the bottom of the left big toe and around the cuticles of his fingernails." Continuing the Court said: "The detectives found a bloodstain on the doorknob of a louvered door opening from the family room to an enclosed bar. On the counter of the bar they found a partially filled bottle of scotch whiskey and a whiskey glass, both of which had bloodstains on them. The kitchen adjoins the family room, and on one counter of the kitchen the detectives found a butcher knife with bloodstains on the stainless steel blade, and on another counter near the sink they found a butcher knife that had been washed and was still wet. They found a pillowslip with a bloodstain on it on a bed in a small bedroom connected with the breakfast room. When the body was turned over, a bandaid was found underneath the body. All of these items, together with the pink bedspread which partially covered the body, were received as exhibits. All of these items were recovered on the night of August 26, while the detectives were investigating the killing and before the appellant was formally arrested on August 27."

The Court further found that when Grady Tucker arrived, he turned the clothes dryer off at the request of petitioner and that, during the course of their investigation, the detectives discovered the dryer still warm with the items of clothing and towels in it. These were primarily the items picked up the next day under a search warrant after petitioner had been formally arrested. The Court affirmed the trial court's refusal to allow the contents of the dryer to be introduced in evidence, and affirmed the trial court's finding that the detectives had probable cause to arrest petitioner with the consequent proper admission of the articles picked up in their initial investigation which occurred on the night of August 26, adding this: "These detectives would have been derelict in their duty if they had not been alert and observant in investigating a death which bore every indication of having been violently inflicted by the only other person present, namely, Mrs. Catherine Pendergraft; they would have been derelict in their duty if they had not followed up every lead they ran across."

As to why petitioner was not then and there arrested and booked, the appellate court stated that the doctors, the detectives and other witnesses testified that petitioner talked with a thick tongue and appeared to be under the influence of alcohol or drugs; that she was in a precarious mental, physical and emotional condition. There were numerous phone calls between Dr. Tumlinson and the district attorney, the coroner and the district attorney, and one of the detectives and the district attorney. Her doctor was unable to find a hospital room for her. After this enumeration, the appellate court said:

"It follows quite logically that the only reason the appellant was not arrested that very night was because all parties were concerned about her doubtful condition; there certainly was probable cause to suspect her. The appellant was alone with her husband in their home when he was fatally wounded and when he was stabbed seventeen times. She never denied that she had done the stabbing; she said that he attacked her and she acted in self defense."

The Court continued:

"The items were found and taken from the immediate vicinity of the body

or from the rooms adjoining the family room where the body itself was found. These articles were properly admitted into evidence."

On July 15, 1969, petitioner filed her application for a writ of habeas corpus in this Court setting forth that she was first tried on December 8, 1965, and convicted; this conviction was reversed and the cause remanded, 191 So.2d 830; she was tried and convicted again on January 9, 1967; this conviction was affirmed on July 8, 1968, 213 So.2d 560; [1] on her appeal to the United States Supreme Court, that court, on April 21, 1969, denied jurisdiction, if an appeal, and, if a petition for certiorari, denied certiorari, 394 U.S. 715, 89 S.Ct. 1453, 22 L.Ed.2d 671. A petition for a rehearing was denied by the U. S. Supreme Court on June 2, 1969, 395 U.S. 941, 89 S.Ct. 1993, 23 L.Ed.2d 459. She filed a petition for leave to file a writ of error coram nobis in the State Supreme Court, and on July 7, 1969, it was denied. The respondent conceded that petitioner had exhausted her state remedies, and that at every stage of her litigation she had protested the exclusion of women from both the grand and petit jurors which convicted her and the introduction into evidence of the fruits of an alleged illegal search, being the two grounds urged upon this Court.

By stipulation, the parties agreed that the official record of her second state court trial, or any portion thereof could be introduced into evidence, and further stipulated that the evidence relied on by petitioner as the fruits of an illegal search consisted of a whiskey bottle, glass and pillowslip containing blood stains. Attached to the stipulation but not referred to therein was a floor plan of the residence containing a legend of where, but not when, certain articles were seized.

The matter was submitted to this Court on the pleadings, the stipulation, only that portion of the record pertaining to the hearing on the motion to suppress, and briefs. In the absence of a transcript of the record of the trial itself, showing which articles were in fact offered in evidence, and being of the opinion that petitioner's contention that she was deprived of a constitutional right in the total exclusion of women from both the grand jury which indicted her and the petit jury which tried her involved a controlling question of law, this Court confined its opinion to the jury issue only, finding in petitioner's favor.

By its remand, the Fifth Circuit Court of Appeals has now directed this Court to pass on the second ground of the petition, that is whether or not the evidence introduced into petitioner's second state trial was the result of an illegal search.

Toward this issue, the parties have offered a supplemental stipulation that (1) a transcript of the entire record of the trial in Cause No. 44,873 on the docket of the Mississippi Supreme Court, together with exhibits, or any portion thereof, may be introduced; and (2) that all the hereafter listed items were seized as evidence by members of the Jackson Police Department on the night of August 26, 1965, in petitioner's home without a search warrant and without her being arrested or advised that she was suspected of killing her husband:

(a) One pillowslip with a blood spot thereon.

(b) One glass with bloodstain thereon.

(c) One scotch whiskey bottle.

(d) One butcher knife with bloodstain on its handle.

(e) One butcher knife with water spots on its blade.

(f) One, sponge with blood spot thereon.

(g) One bedspread with blood spot thereon.

Petitioner has submitted to the Court for the first time the entire transcript

---

1. The Court notes her motion for a rehearing was denied on July 8, 1968.

of her second trial and conviction including a transcript of the pre-trial hearing on the motion to suppress, all of which the Court has carefully considered along with the pleadings, stipulations and exhibits thereto, and briefs.

Supplementing the facts found by the Mississippi Supreme Court, this Court finds that the trial record reveals that the wounds inflicted on the deceased occurred in the early afternoon of August 26, 1965, at a time when the deceased and petitioner were alone in the residence. Other than petitioner's saying that she took a pill and went to sleep, the record is silent as to what happened from then until petitioner, at about 7:30 p. m., telephoned the Tuckers to come to the residence. One or the other of the Tuckers called Dr. Tumlinson, petitioner's physician, who arrived at the home around 8 p. m., or after, shortly before Tucker, his wife, and three other people with the Tuckers got there. Dr. Tumlinson called the coroner who came to the residence and who then called the Jackson Police Department. Detective Sergeants J. L. Black and S. M. Magee responded. They arrived at 9:20 p. m. Persons who had remained on the premises besides petitioner, were Dr. Tumlinson, and the Tuckers. The police officers examined the body in the presence of Dr. Tumlinson, who probed the wounds and offered the opinion that none was fatal. The coroner arrived, and he, too, in the presence of Dr. Tumlinson examined the body. In detailing the search of the premises, the responses of the officers at various times during the trial, and particularly when read out of context, might infer that various items were picked up before the officers' attention focused on petitioner. However, in trying to determine the exact sequence of events following the examination of the body, the district attorney directed this question to Sergeant Black: "Then you had been in the house about an hour, then, before you actually conferred with Mrs. Pendergraft, according to your testimony?" His answer was: "No, sir I wouldn't think it was an hour before we conferred to (sic) her. Only after the examination of the body and it was determined by her and by Dr. Tumlinson that no one else was there, I asked Mrs. Pendergraft what had happened, or could she tell me what had happened." Other than the band aid and spread covering the body, immediately observable to the police, the investigation then revealed traces of blood on the floor of the family room where the body lay and on the door knob on the louvered door leading to the bar, only a few feet from deceased's head. On opening this door, the blood-smeared bottle and glass were evident. Sergeant Black stated that at one time Mrs. Pendergraft was seated in a chair next to the open doorway leading from the family room to the kitchen, and that when he went over to talk to her he noticed in clear view the bloodstained butcher knife on the kitchen counter, and the knife with drops of water still clinging to it hanging in a rack by the sink. One of the Tuckers directed his attention to the dryer in the utility room adjoining the kitchen, which was warm to his touch, and to the bloodspotted pillowslip lying on a bed in a back room designated on the plat as an office. During the course of the evening, and while the inquest was taking place, Black testified that petitioner wandered from room to room, and at one point when she was in the master bedroom he noticed a sponge on the floor of a room on his way to see her.

In the opinion of this Court, the validity of the search hangs on the determination of whether the search led to the eventual arrest, or whether probable cause for arrest existed before the search. Bailey v. United States, 128 U. S.App.D.C. 354, 389 F.2d 305.

As to why petitioner was not immediately arrested prior to or incident to picking up those articles not under the immediate observation of the police, the district attorney, as reflected in the transcript of the hearing on the motion to suppress, attempted to show that due to petitioner's physical and mental con-

dition and the lack of a hospital room, petitioner's arrest was humanely delayed to the next day, yet she nonetheless was in protective custody. He attempted to do this by questioning petitioner's doctor, one of the detectives, and the coroner as to various telephone conversations had between them and himself as to what should be done with her that night. As these conversations took place outside the presence of petitioner, they were ruled inadmissible, only the inference of his attempt remaining. He then offered to testify himself, but objections to his taking the stand were sustained.

■ The district attorney also attempted to show that petitioner consented to the search. Officer Black, under direct examination, stated that petitioner was cooperative with the police and made no objection to the search of the residence and examination of various articles. Petitioner denied the truth of this statement. Be that as it may, all witnesses were agreed that petitioner was in a dazed condition, from drugs, alcohol or shock. There can be no consent to a search under these circumstances. United States v. Moody, D.C., 311 F. Supp. 756. Similarly, it is doubtful that her feelings could be properly analyzed to test whether or not she was aware of being in custody, such awareness being a factor to consider in determining whether an arrest had been made. United States v. Cortez, 6 Cir., 425 F.2d 453; and United States v. Grandi, 2 Cir., 424 F.2d 399. Nonetheless such a determination is unnecessary for, as shown by its stipulation, the state admits no arrest was made. It remains, then, that the legality of the search must be tested in relation to probable cause for arrest.

"A search is not to be made legal by what it turns up." United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210. Similarly an arrest is not valid if made without probable cause. In the absence of an arrest, the issue here is whether or not probable cause alone can validate a warrantless search. It apparently can if the results of the search do not determine probable cause.

■ Under Mississippi law, a police officer without a warrant may arrest a person when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person committed it. Lathers v. United States, 5 Cir., 396 F. 2d 524, 525. There is no question in this case but that Officers Black and Magee had authority to arrest petitioner. This is determined by Section 2470 of the Mississippi Code of 1942. However, when the constitutional validity of an arrest by a state official arises on an application for a writ of habeas corpus, federal constitutional standards alone establish the test. Paige v. Potts, 5 Cir., 354 F.2d 212. It is the function of the federal court to determine whether the facts available to the officers at the moment of arrest would "warrant a man of reasonable caution in the belief" that an offense had been committed. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. A hunch does not constitute probable cause. At the other extreme neither is probability a certainty or a conclusion beyond a reasonable doubt. Lathers v. United States, supra.

■ This Court agrees with the finding of the state supreme court that probable cause existed for the arrest of petitioner, but this of itself does not validate the search. The cause for arrest must exist independent of the search. Upon the officers' observance of the body in rigor mortis and upon their awareness that petitioner had been at home alone with the deceased throughout the afternoon and evening, they had probable cause for arrest. In the obvious fact that, when they arrived, efforts had been made to clean the body, traces of blood being present on the floor and nearby door knobs, and because of the numbers of people in and out of the premises, their efforts to gather and preserve evidence were permissible. This Court agrees that the detectives would have been derelict in

their duty if they had not been alert and observant in investigating a death which bore every indication of having been violently inflicted.

If any search were valid, petitioner contends that this search was too broad in its range, relying heavily on the limited search permitted under the holding in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. Although the Supreme Court in a later case, Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409, refrained from expressing an opinion as to whether Chimel should be applied retroactively, the Fifth Circuit Court of Appeals has refused to give it retroactive effect. United States v. Bankston, 5 Cir., 424 F.2d 714, and Lyon v. United States, 5 Cir., 416 F.2d 91. The search involved here occurred before the decision in Chimel, and under United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, would have been permissible. The Fourth Amendment prohibition against warrantless searches is well established. The "exceptional circumstances" which may validate a search without a warrant were listed in the Vale decision. This Court notes that all the cases cited therein as well as those immediately above treat of searches "incident to an arrest." For them to be applicable to the present case means that "incident to an arrest" must be equated with probable cause. An informative treatment of this point is found in United States v. Gorman, 2 Cir., 355 F.2d 151, cited with approval in Bailey v. United States, supra. In Gorman, at pages 159 and 160, the Court pondered the circumstances of a case in which probable cause was found in support of a search made prior to an arrest:

"If we were to hold that Roche did not consent, we would be obliged to consider another basis for supporting the search. The argument would be that when a suspect is available for immediate arrest at the place of the search, to which the police have lawfully gained access, and reasonable cause for his arrest exists, a search of personal effects without a warrant is reasonable even though arrest is postponed. The record furnishes the necessary premise. The combination of facts known to the agents—Gorman's admission to having an accomplice. Gorman's and Roche's common use of the Connor-Noel cover, Roche's disclaimer of knowledge of a person in his company answering Gorman's description, and the telephone calls from Gorman to Roche's room in the Holiday Inn—would together have constituted reasonable cause for arresting Roche prior to the search of his luggage; each fact augmented the probative force of the others. Cf. United States v. Monica, 295 F.2d 400, 401–402 (2 Cir. 1961), cert. denied, 368 U. S. 953, 82 S.Ct. 395, 7 L.Ed.2d 386 (1962).

"No Supreme Court decision speaks directly to the point. Husty v. United States, 282 U.S. 694, 700, 51 S.Ct. 240, 75 L.Ed. 629 (1931), which would seem to sanction such a search, may rest on special considerations applicable to moving vehicles. Johnson v. United States, 333 U.S. 10, 15–17, 68 S.Ct. 367, 92 L.Ed. 436 (1948), and Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), which might appear at first blush to look the other way, are fairly distinguishable—Johnson on the ground that the arresting officer had no 'valid basis in law' for his intrusion into the defendant's room. 333 U.S. at 16–17, 68 S.Ct. 367, and Henry on the point that no reasonable grounds existed for the arrest, conceded and held to have occurred when the car was stopped. 361 U.S. at 103, 80 S.Ct. 168. Contrast Rios v. United States, 364 U.S. 253, 262, 80 S.Ct. 1431, 4 L. Ed.2d 1688 (1960). Indeed, Ker v. State of California, 374 U.S. 23, 43, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (opinion of Mr. Justice Clark), indicates the question to be open. We have likewise found no controlling decision in this circuit. Mr. Justice Traynor's well-known opinion in Peo-

ple v. Simon, 45 Cal.2d 645, 648, 290 P.2d 531, 533 (1955), would sustain the validity of such a search, see also Willson v. Superior Court, 46 Cal.2d 291, 294 P.2d 36 (1956); and Mosco v. United States, 301 F.2d 180, 188 (9 Cir.), cert. denied, [Hansen v. United States], 371 U.S. 842, 83 S.Ct. 72, 9 L.Ed.2d 78 (1962), is not to the contrary in the circumstances here presented. Compare United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). Lee v. United States, 98 U.S.App.D.C. 97, 232 F.2d 354 (1956), may be distinguishable, like Johnson, on the basis of unlawful entry by the police, and would not bind us in any event. We do not understand just what values would be served by a rule that would force the police to impose a justifiable restraint on the person as a condition to making a search which, if fruitless, might cause them to decide against it; on the other hand, if the search does lead them to make an arrest for which reasonable cause previously existed, the search would seem 'incident to arrest,' United States v. Rabinowitz, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653 (1950), in any normal use of language, and the dilemma of seeking 'to justify the arrest by the search and at the same time to justify the search by the arrest,' Johnson v. United States, supra, 333 U.S. at 16–17, 68 S.Ct. at 370, is obviously not presented. Since, however, the alternative basis here considered has not been argued by the Government, we rest our decision on what we consider the sufficient ground of consent and leave determination of this issue for another day."

In Bailey, Judge J. Skelly Wright, held: "Even if the formal arrest was not made until after the search, the search will be upheld so long as there is probable cause for an arrest before the search is begun." The Gorman case was cited as authority. Later in his opinion, Judge Wright quoted from McDonald v. United States, 335 U.S. 451, 459, 69 S. Ct. 191, 93 L.Ed. 153: "The 'exigencies of the situation made (the police) course (of action) imperative.'"

Under the reasoning of the Gorman decision and applying it and Bailey to the present case this Court finds that independent of the search there was probable cause to arrest petitioner, and that the ensuing search was valid and necessary for the preservation of evidence, an exigency or special situation recognized in Vale.

Otherwise, the Court re-affirms its earlier decision that petitioner is entitled to be indicted and tried by juries from which women have not been excluded, particularly in view of her alleged plea of self-defense.

An order may be submitted granting the writ of habeas corpus, except that petitioner shall remain at her present place of confinement without bail, until the appropriate state officials determine within a reasonable time whether or not to seek her re-indictment and another trial.

## SUPPLEMENTAL OPINION

In its recent opinion of February 22, 1971, upholding the validity of the search, on which no order has been entered, this Court in effect found that the application for a writ of habeas corpus should be denied on the issue remanded to it in the decision of the Fifth Circuit Court of Appeals, Pendergraft v. Cook, 433 F.2d 969. However, in clinging to its former opinion, before the remand, that petitioner was entitled to be indicted and tried by juries from which women had not been excluded, this Court is faced with the anomalous position of granting the writ on an issue the Appellate Court refrained from ruling on. As its aforesaid opinion stands today, the Court finds that it has placed a burden on the respondent to determine whether or not to effect an appeal, whereas the burden should be on petitioner who has raised the issues. Accordingly, the Court finds that the granting of the

writ of habeas corpus should be stayed pending an appeal of the Court's opinion of February 22, 1971, as this day supplemented.

The Court will draw its own order.