PIGOTT *v.* STATE.

[65 South. 583.]

CRIMINAL LAW. *Trial. Instructions.*

An instruction for the state in a criminal case "that the jury do not have to believe a witness just because he testifies, and may take into consideration his interest if any, and believe or disbelieve any witness as the jury may find the truth in all of the testimony," is erroneous under the facts of this case as singling out for attack the testimony of accused who took the stand.

APPEAL from the circuit court of Pike county.

HON. D. M. MILLER, Judge.

O. A. Pigott was convicted of murder and appeals. The facts are fully stated in the opinion of the court..

*Price & Price,* for appellant.

In *Woods* v. *State,* 67 Miss. 575, this court plants itself squarely on the proposition that it is erroneous to give an instruction, that the jury should consider the feeling and interest of any witness in connection with all the testimony in determining how far, if at all, they could believe such witness or consider such testimony.

This court has planted itself upon high ground in this case—"That the defendant is entitled to submit his testimony to the jury uninfluenced by any suggestions from the court." In *Buckley* v. *State,* 62 Miss. 705, this doctrine is again discussed and the rule of this court propounded so clearly that he who runs may read. There the court says: "The accused was a competent witness for himself, and it is error for the court to instruct the jury in trying one for murder, that in weighing the defendant's testimony, they should consider the interest he had in the results and that they may disregard it altogether, and that the defendant's testimony should be permitted to go to the jury without being prejudiced, impaired, or influenced by suggestions from the court as to its probable falsity.

In the *Spivey case,* 58 Miss. 858, this court went further and held that it was error to instruct a jury "That if the jury believed from the whole evidence that any witness or witnesses for the defendant, wilfully and knowingly testified falsely to any material facts in the case, that the jury should disregard the testimony of such witness and should disbelieve them altogether as unworthy of credit. Also condemned in *Finley* v. *Hunt,* 56 Miss. 221; *Owens* v. *State,* 80 Miss. 512; *Davis* v. *State,* 42 So. 541; *Jeffreys* v. *State,* 77 Miss. 761.

It may be argued that if there were other witnesses in the case, such instruction might refer to them, but if the court will read the special bill of exceptions, where the district attorney by his argument, taking Grace Harness out of the case, and taking Johnson out of the case, and reads the above quoted instruction to the jury, it will be seen that the state intended to direct his argument at Pigott. But it makes no difference if there were other witnesses in the case, or what the state intended, since in *Townsend* v. *State,* 12 So. 209, a Mississippi case, this court said: "It is error in a criminal case, where the defendant, though not the only witness in his

own behalf, was still the only witness interested, to charge that the jury might consider the interest of any witness in connection with all the evidence in determining how far, if at all, they would believe him, as this was in effect to single out and mark the defendant for discredit.'' In *Howell* v. *State*, 98 Miss. 493, it is held: ''This instruction unmistakably singled out the defendant and marks him for discredit by the jury, and it is not true, moreover, that because of his interest in the result of the verdict, that the jury might arbitrarily reject this evidence and refuse to consider it.'' It will be noted that the court holds, as a matter of law, that it cannot be said that such an instruction, even where other witnesses testify for the defendant, refer to other witnesses. It refers to all witnesses and the defendant is one of them.

In *Howell* v. *State, supra*, the court, in passing upon a similar instruction given by the circuit court, pronounces it error and dismisses it with the statement: ''This instruction omits the necessary qualifying words that the false testimony should have been given wilfully and corruptly, and this instruction has been repeatedly condemned by this court, so often, that it is unnecessary to refer again to the cases.''

In *Wofford* v. *State*, 99 Miss. 759, the following instruction was under review: ''The court charges the jury that they have a right in passing upon the weight of the evidence of any witness, to take into consideration the interest the witness may have in the case, one way or the other, if any is shown, and in this case if they believe that any witness has testified falsely to any material matter, they have a right to reject all the testimony of such witness if they see proper.''

And the attorney-general sought to save the fatal error in this instruction by citing the *Waldrop case*, 54 So. 66, but the court speaking through Justice SMITH, said: ''The fourth instruction granted by the court at

the request of the state is erroneous. It omits the quali-
fying clause that the false swearing must have been in-
tentionally and corruptly done." The learned judge
cites in support of that doctrine the following: *White* v.
*State,* 62 Miss. 216; *R. R. Co.* v. *Hendrick,* 62 Miss. 619;
*Davis* v. *State,* 89 Miss. 119; *Bell* v. *State,* 90 Miss. 104;
*Turner* v. *State,* 95 Miss. 879; *Waldrop* v. *State,* 54 So.
66. The instruction in the instant case started out with
the bald proposition that a jury does not have to be-
lieve a witness because he testifies in a case, inferentially
telling the jury that they may disbelieve any witness who
does testify in a case, and assign no reason, or rule
approved by the court in refusing to believe such wit-
ness, simply disbelieving him, but the instruction in the
second paragraph, after charging the jury that they
do not have to believe a witness who testifies, points
out clearly to them, that they may take into considera-
tion the interest of such witness and believe or disbe-
lieve him, as they believe the truth to be. Both propo-
sitions are false and are not founded in law or reason.

*Frank Johnson,* for appellee.

There were three instructions given for the state, all
of which are criticized by the learned counsel for the
appellant.

The first instruction is as follows: "The court in-
structs the jury that if you believe that any witness in
this case has knowingly, and corruptly testified falsely
to any material fact in this case, you may disregard such
witness's testimony all together." This instruction does
not offend against any of the doctrines laid down by this
honorable court. In *Spivey's case,* 58 Miss. 858, the in-
struction which was condemned was too narrow. It
simply told the jury that they might reject the testi-
mony of any witness who had falsely testified.

The instruction in the present case expressly provides
that the witness must have knowingly and corruptly

testified falsely to a material fact in the case. The instruction is, therefore, correct and not within the condemnation that has been pronounced upon any similar instruction in any of the decisions of this court as I respectfully submit.

The second instruction is as follows: "The court instructs the jury that you do not have to believe a witness just because he testifies in the case, and in passing on the testimony of any witness, you may take into consideration the interest of such witness if he had any and believe or disbelieve any witness as you believe the truth is from all the testimony in the case." The objection made to this instruction by counsel for the appellant is that it is necessarily directed to the testimony of the defendant and that it could not possibly apply to the testimony of any other witness in the case. The testimony of Grace Harness may be that of an interested witness. It was for the jury to decide whether she had an interest in the case or not as between Pigott and Brumfield.

REED, J., delivered the opinion of the court.

Appellant was indicted for the murder of Wallace Brumfield. He was convicted and sentenced to the penitentiary for life.

It is contended that the evidence in this case is not sufficient to uphold the verdict of murder.

The difficulty in which Wallace Brumfield was shot occurred after dark on a Saturday evening in June, 1913, in an open woods near to the village of Knoxo. Appellant was on his way home and going along a trail or path which he was accustomed to use. A colored man, Thad Ball, who was with Grace Harness, a young colored woman in a clump of trees near the pathway, hailed appellant to borrow a dollar from him. About this time Brumfield, in a buggy accompanied by John Magee, a colored man, drove up. Appellant and Brumfield were not acquainted with each other. Brumfield was in search

of the girl, Grace Harness, with whom he had had illicit relations. Magee got out of the buggy and called to Grace to go to Brumfield. Magee then left. He had used insulting words, and appellant had told him that he had better get away if he was speaking to him (appellant). Brumfield, as Magee was leaving, called and said to him that he would back him. Brumfield then got out of the buggy, advanced upon appellant, and an altercation followed in which appellant was knocked down by Brumfield, and as he arose fired one shot from a 25-caliber pistol, which struck Brumfield just above the heart and caused his death. Appellant left the place and went home. There were four persons present at the time the fatal shot was fired. Three testified—Grace Harness, T. B. Johnson, and appellant. That Ball was not introduced. Grace Harness testified that, as Magee ran off, Brumfield told him to come back, that he would back him; that Brumfield got out of his buggy, and the difficulty between him and Pigott started; that both parties were cursing, and Brumfield applied a very vile epithet to appellant; that one of the parties slapped the other, and then Brumfield knocked appellant down; that she was then getting away from the place, but saw appellant fire his pistol, but did not know what Brumfield was then doing. Johnson's testimony shows that Brumfield got out out of his buggy, cursed appellant, saying, "I will kill you," advanced upon and hit him several times, knocking him down; that Brumfield then began to pull his pistol and had it nearly out when appellant fired upon him. Appellant's own testimony shows that he had been attacked by Brumfield and knocked down; that, as he was arising and trying to get away, Brumfield was attempting to draw his pistol and threatening to shoot; and that he (appellant) thereupon fired, when Brumfield lowered his hand and sat down. Appellant testified that at the time he did not know who the person was he was in the difficulty with; in fact, whether his assailant was a white man or a negro.

We do not see in the evidence in this case proof of the crime of murder. The circumstance of appellant's failure to tell of the difficulty just after it happened and until the body of deceased had been found and it was ascertained that his death was caused by a ball from a 25-caliber pistol may indicate that he did not act with the best judgment consistent with innocence, but can hardly amount to proof to supply the deficiency in the testimony giving the actual facts of the occurrence. We fail to find any proof showing motive, or malice, or deliberate design on the part of appellant. He is a man of family and of good character. He did not have an engagement that evening with Grace Harness and had never had an engagement, or any association, with her. The meeting upon this occasion when she was with Thad Ball was by chance. While he was on his way home, going along a path he had the right to travel, he was attacked by a man, a stranger to him. According to the state's evidence, he was cursed by this unknown person, who applied the vilest of epithets and then knocked him down. A very brief time, perhaps only a few minutes, intervened between the arrival of Brumfield and his attack upon appellant. Appellant did not have opportunity to deliberate. Suddenly and in the dark he found himself in serious combat with an unknown man. He had not accosted or stopped the stranger, or brought on the difficulty. He shot a man, unknown to him, a few minutes after meeting, and after the man had cursed him and knocked him down. Considering all of the testimony for the state in its most favorable aspect, it can only be said that appellant acted in the heat of passion. The evidence for appellant presents a case of self-defense. The court committed error in submitting to the jury the question of appellant's guilt of murder.

Appellant complains that the court erred in giving the second instruction for the state, which reads:

"The court instructs the jury that you do not have to believe a witness just because he testifies in the case,

and, in passing on the testimony of any witness, you may take into consideration the interest of such witness, if he has any, and believe or disbelieve any witness as you believe the truth is from all the testimony in the case.''

This instruction should not have been granted. Under the facts of this case, it is necessarily directed to the testimony of appellant. It singles out and marks him for discredit. Such instructions have been condemned by this court. *Buckley* v. *Dunn,* 67 Miss. 710, 7 So. 559, 19 Am. St. Rep. 334; *Woods* v. *State,* 67 Miss. 575, 7 So. 495; *Townsend* v. *State,* 12 So. 209.

*Reversed and remanded.*