HALL *v.* STATE

No. 42910          June 8, 1964          165 So. 2d 345

*Barnett, Montgomery, McClintock & Cunningham,* Jackson, for appellant.

256

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, P. J.

The appellant Leo Hall was indicted, along with one John C. Clements, at the November 1962 term of the Circuit Court of the First Judicial District of Hinds County, on a charge of attempted criminal abortion. The crime was alleged to have been committed on September 4, 1962. The indictment charged that the appellant and his coindictee, John C. Clements, ''did then and there willfully, unlawfully and feloniously and knowingly attempt to cause Mary Ann Eakin Johnson, a female, then pregnant with child, to abort and miscarry by the use of instruments, medicines and drugs and by transporting the said Mary Ann Eakin Johnson to the Travel Inn Motel and there renting a room, and causing the said Mary Ann Eakin Johnson to disrobe, and in-

jecting drugs into her body, all of which said acts were so performed in the furtherance of the attempt to commit the said abortion and miscarriage, and all of which said acts so performed were not necessary for the preservation of the life of the said Mary Ann Eakin Johnson, but the said Curtis Leo Hall and John C. Clements were intercepted and failed therein and were prevented from committing said abortion.''

A severance was granted, and the appellant Hall was tried and convicted at the January 1963 term of the court, and was sentenced to imprisonment in the state penitentiary for a term of three years. From that judgment he prosecutes this appeal.

The record shows that the police department of the City of Jackson received information on September 4, 1962, that an abortion was planned and was about to be performed on Mary Ann Aiken ''(referred to in the indictment as Mary Ann Eakin Johnson)'' by the appellant Leo Hall. The information was passed on to detective Fred Sanders and R. Q. Turner, members of the Jackson police force. The first information received was, that the abortion would be performed on Tuesday, September 4; but the police department was later informed that the abortion would not be performed until Wednesday night, September 5. That information was immediately passed on to Sanders and Turner, along with other information that the abortion was to be performed at the Travel Inn Motel, on Highway 51 South, just outside the corporate limits of the City of Jackson; and that Hall was to pick up Mary Ann Aiken at Highway 80 Trailer Court. The officers established a watch across the street from the Trailer Court during the early part of the night, and maintained a lookout for Hall's automobile, but they did not see Hall's car approach the Trailer Court. Other detectives, however, were on the lookout for Hall's 1959 black Ford sedan, and about 8:30 o'clock Sanders and Turner were notified

that Hall's 1959 black Ford car was parked at the Travel Inn Motel on Highway 51 South. Upon receipt of that information Sanders and Turner proceeded to the Travel Inn and found the 1959 Ford parked in front of Room 152. Sanders and Turner parked their car three doors south of Room 152. The sheriff's office in the meantime had been notified of the investigation, and deputy sheriff William Shuttleworth arrived at the Travel Inn about the time that Sanders and Turner parked their car near the entrance to Room 152. Sanders and Shuttleworth were left to maintain a watch near the entrance for persons entering or leaving the room, while Turner made inquiry at the motel office as to the name of the registered occupant of the room. Turner found that the motel registration card showed the name of the occupant as "Paul Lee, Hernando, Mississippi," and a Tennessee automobile tag No. 19210.

A few minutes after Turner left, Shuttleworth and Sanders saw Hall come out of Room 152 and walk over to the black Ford and place something in the car and then go back into the room. A few minutes later they saw Hall come out again and get a bottle of Coca Cola and then go back into the room. After that Shuttleworth and Sanders saw another man, who was later identified as John C. Clements, come out of the room and go to a parked car, and then go back into the room with a brown leather bag. About that time Turner came back to the car in which Shuttleworth and Sanders were seated. A few minutes later the three officers observed a strong odor of medicines or disinfectants emanating from Room 152; and they heard noises like metal instruments clanking and furniture being moved. Shuttleworth then knocked on the door and said, "Leo, open the door." Hall said, "Just a minute." Shuttleworth waited a short time and knocked again, and finally the door was opened. The officers entered the room and Shuttleworth told Hall that he was under arrest for

abortion. Clements and Mary Ann Aiken were found hiding in the bathroom. Mary Ann Aiken had a sheet wrapped around her and a skirt in her hand. Clements had a pistol in his hand, which he delivered to the deputy sheriff. The officers saw that two drawers had been removed from the dresser and placed on the bed. The officers found in the bathroom a quantity of disinfectants and a complete assortment of surgical and medical instruments, appliances and supplies, including forceps, catheter tubes, hypodermic needles, syringes, and a number of bottles of liquid and pills. The brown leather bag was lying on the floor open. Clements and Mary Ann Aiken were placed under arrest.

A few minutes later an ambulance was called, and Mary Ann Aiken was sent to the University Hospital for a medical examination. Detective Turner accompanied her to the hospital. Other officers were called in, and Hall and Clements were carried to the county jail and locked up for the night. Sanders and Shuttleworth remained in Room 152 for a considerable period of time. Pictures were made of the room and the bathroom and the contents. Each piece of surgical and medical equipment was tagged and delivered to the deputy sheriff for safekeeping.

Detective Turner testified that he saw Hall again that night in a conference room upstairs at the jail. No one was in the room except Turner and Hall. Turner stated that he had known Hall for several years and that he said to Hall, "Leo, why did you get mixed up in something like this?" Hall's answer was, "Well, you know how it is, when a pretty little ole girl gets into trouble you want to help her out."

Nine witnesses were called to testify on behalf of the State. The defendant was the only witness who testified in his behalf on the main issue presented for the jury's decision.

The appellant's attorneys have assigned and argued four points as grounds for reversal of the judgment of the lower court: (1) That the trial judge erred in allowing the State to prove, over the defendant's objections, statements made by the accomplice Mary Ann Aiken to Dr. Chester M. Lake, implicating the defendant, which were made out of the presence and hearing of the defendant and long after the commission of the alleged offense; (2) that the trial judge erred in allowing the State to prove, over objections, statements made by the accomplice Mary Ann Aiken to detective R. Q. Turner implicating the defendant, which were made out of the presence and hearing of the defendant and long after the commission of the alleged offense; (3) that the trial judge erred in overruling a motion of the defendant for a peremptory instruction at the close of the State's evidence; and (4) that the trial judge erred in granting certain instructions for the State.

In view of the fact that the judgment of the lower court must be reversed and a new trial granted because of errors in the instructions, it is not necessary that we discuss in detail the testimony of the witnesses.

The first two points mentioned in the appellant's assignment of errors relate to the admission of the testimony of Dr. Chester M. Lake and the testimony of detective R. Q. Turner concerning statements alleged to have been made to them by Mary Ann Aiken which were entirely contradictory of testimony given by her when she was called to testify as a witness.

The record shows that Mary Ann Aiken was called to testify as the first witness for the State. She proved to be a very unfriendly, indeed hostile, witness. She stated that she had been in Jackson two or three days, that she knew the defendant Hall, and she had seen the defendant John C. Clements prior to the night of September 5, 1962. She stated that she left the trailer home of Mrs. Lillian Whitehead about 8:00 o'clock on

the night of September 5, and met Mr. Hall at the Highway 80 Trailer Park. She stated that she and Mr. Hall drove to the Travel Inn Motel and Mr. Hall parked his car at the American Legion Post and registered in Room 152. She stated that she did not go to the Travel Inn Motel to have an abortion — that was not the purpose of Mr. Clements coming to the room. She stated that she did not tell Mrs. Lillian Whitehead that she was going to the Travel Inn Motel to have an abortion. She stated that her purpose in going to the motel with Mr. Hall was to discuss business and have a few drinks, that she had asked Mr. Hall to get her a car. She admitted that she did not tell the district attorney, the day she was in his office in September, that she was at the Travel Inn Motel with Mr. Hall to discuss business. She was then asked whether she gave the police officers a statement shortly after she was arrested. She admitted that she gave the police officers a statement, but she stated that what she said in that statement was what they wanted her to say, that they told her she would not be prosecuted if she would give them the information. She was then asked whether or not it was true that she admitted in that statement that she was down there for the purpose of having an abortion. Her answer was "Yes." She also admitted that she had stated to the police officers that she had two shots, one in each hip, before the police came into the room, and that she had paid Mr. Hall $90 to perform the operation.

At this point the examination of the witness was interrupted by the trial judge, who stated that the court had previously sustained the defendant's objection to leading questions asked by the district attorney, but the court was of the opinion that since the witness had denied the truthfulness of the statements which she had given the officers, the district attorney had a right to claim surprise and the district attorney would be

permitted to ask leading questions. The witness was thereafter asked leading questions by the district attorney. Along with other denials she denied specifically that she had told Dr. Lake that Mr. Hall and Mr. Clements had attempted to perform an abortion on her. She admitted, however, that such statement was in the statement which she gave to detective Turner of the Jackson police department. On cross-examination by the defendant's attorney the witness stated that the defendant did not attempt to cause her to have an abortion while they were in the motel room on the night of September 5, and she did not tell Dr. Lake anything except that there was nothing wrong with her.

It is argued on behalf of the appellant that the court erred in permitting Dr. Lake to testify as to statements made by Mary Ann Aiken concerning incriminating acts allegedly undertaken and performed by the defendant before the police arrived. It is argued that the statements alleged to have been made to Dr. Lake were nothing more than a narrative of past transactions or detailed circumstances which were not admissible as evidence in a criminal case under any recognized exception to the "hearsay" rule. It is also argued that the trial court erred in permitting detective Turner to testify as to statements made to him by Mary Ann Aiken implicating the defendant which Mary Ann Aiken never denied or on which she had never contradicted herself.

It is not necessary that we discuss in detail the merits of the above mentioned first and second assignments of error for the reason that Mary Ann Aiken's repudiation of the statements which she made to Dr. Lake and Detective Turner are now well known to the State's attorney, who will not be in a position to claim surprise if he should call the witness to testify as a witness for the State on another trial.

It should be stated, however, that this Court has held that the State is not bound by the testimony of

a witness who unexpectedly proves hostile. ▉▉ ▉ Witnesses may be cross-examined or impeached by the party calling them when they prove to be hostile. Bove v. State, 185 Miss. 547, 188 So. 557; Rutland v. State, 170 Miss. 650, 155 So. 681. ▉▉▉ ▉ But a proper foundation must be laid in order to impeach a witness. The party must first show that the evidence as given, has taken him by surprise and that the witness is hostile. The witness may then be asked if he has made contradictory statements out of court, the times, places and circumstances of the statements being described to him in detail. Underhill's Criminal Evidence, Vol. 1, Fifth Edition, p. 547.

▉▉▉ ▉ "It is well settled as a rule of evidence that, if a witness, upon either direct or cross-examination, testifies to a fact that is relevant to the issue on trial, the adverse party, for the purpose of impeaching his testimony, may show that the witness has made previous inconsistent or conflicting statements either by eliciting such statements on cross-examination of the witness himself, or by proving them by other witnesses." Commonwealth v. West, 45 N.E. 2d 260, 312 Mass. 438. ▉▉▉ If the witness confesses or admits having made the prior inconsistent statements, ordinarily there is no necessity for further proof, as by the admission of the prior inconsistent written statement. See 58 Am. Jur., p. 430, Witness, § 780.

▉▉▉ ▉ It should be kept in mind, however, that evidence of extra judicial statements made by a witness who is not a party and whose declarations are not binding as admissions is admissible only to impeach or discredit the witness and is not competent as substantive evidence of the facts to which such statements relate, and this rule is equally applicable where a party impeaches his own witness by inconsistent statements. 58 Am. Jur., 421, Witnesses, § 770, and cases cited.

As to the appellant's third assignment of error, we think there was no error in the action of the trial judge in overruling the defendant's motion for a peremptory instruction at the close of the State's evidence. On the evidence presented the issue as to the defendant's guilt or innocence was a question for a jury to decide.

We come now to a consideration of the errors in the instructions complained of by the appellant on this appeal, which in our opinion are such as to require a reversal of the judgment of the lower court.

It is first argued that the court erred in granting the State's Instruction No. 4, which reads as follows: "The court instructs the jury for the state that you are the sole judges of the credibility of the witnesses who testify in this case, and in determining what weight you should give the testimony of any witness, you have the right to consider their demeanor upon the witness stand; what interest that they may have in the result of the trial, if it has been shown by the evidence that they have any, and all other facts and circumstances in the evidence in this case."

The above mentioned instruction, in our opinion, should not have been granted under the facts disclosed by the record in this case. The appellant was the only witness who testified for the appellant as to the facts and circumstances of the alleged crime. The testimony of the appellant's other witness was limited to a statement as to the reputation of Mrs. Lillian Whitehead, one of the State's witnesses, for truth and veracity. Instructions similar to the instruction complained of have been repeatedly condemned by this Court in cases where the appellant was the only witness called to testify in his behalf.

In the case of Buckley v. State, 62 Miss. 705, the Court said: "A defendant has the right to submit his testimony to the jury to be judged by it, uninfluenced by any suggestions of its probable falsity or an authoriza-

tion to the jury to throw it aside as unworthy of belief because of the strong temptation to the defendant to swear falsely. There is little danger that juries will be unduly influenced by the testimony of defendants in criminal cases." In Woods v. State, 67 Miss. 575, 7 So. 495, the Court said: "The case must be reversed, however, because of the error of the court below in granting the one charge asked by the state. The appellant was the only witness offered by the defense, and this first charge is clearly obnoxious to the condemnation pronounced in Buckley v. State, 62 Miss. 705."

In Smith v. State, 90 Miss. 111, 43 So. 465, 122 Am. St. Rep. 313, the State's second instruction was as follows: "The court charges the jury that they are the sole judges and weighers of the testimony and the credibility of the witnesses, and in passing upon the testimony of any witness the jury may take into consideration the interest such witness may have in the result of the trial, if any, such (as) has been shown by the testimony in the case." The court in its opinion reversing the judgment of the lower court said: "We think it was error to give the State's second instruction. The defendant was the only witness to the fact in his own behalf, and the charge would have been no stronger if it had called his name and cautioned the jury, in its own language, to 'take into consideration the interest such witness may have in the result of the trial.' His testimony should not be so hampered by such express reference." In Chatman v. State, 102 Miss. 179, 59 So. 8, the Court said: "Appellant was the only witness who testified in her behalf in the court below, and her evidence, if believed by the jury to be true, entitles her to an acquittal. Consequently, as held by this Court in Smith v. State, 90 Miss. 11, 43 So. 465, 122 Am. St. Rep. 313, and Gaines v. State, 48 So. 182, the granting of the second instruction requested on behalf of the state

was fatal error." See also Pigott v. State, 107 Miss. 552, 65 So. 583. Buckley v. Dunn, 67 Miss. 710, 7 So. 550.

In Jones v. State, 154 Miss. 640, 122 So. 760, the Court said: "Where the appellant is the only witness in his own behalf, and is clearly the only person connected with the trial who has interest in the case, it is error for the court by this instruction to point out the fact of his interest as a matter to be considered by the jury in determining his guilt or his innocence. This rule, as to this instruction, is upheld in the cases of Buckley v. State, 62 Miss. 705; Woods v. State, 67 Miss. 575, 7 So. 495; Townsend v. State (Miss.), 12 So. 209, and Pigott v. State, 107 Miss. 552, 65 So. 583."

The appellant in this case, as stated above, was his only witness on the facts, and it was reversible error for the trial judge to grant the above mentioned State's instruction No. 4.

██ It is next argued that the court erred in granting the State's Instruction No. 9, which reads as follows: "The Court instructs the jury for the State that while it is true in this case, as in all criminal cases, the defendant is presumed to be innocent until he is proven guilty, and that this presumption of innocence goes with the defendant until he is proven guilty and that this presumption of innocence goes with the defendant throughout the trial, and until overcome by competent testimony, and that while it is further true, that the burden of proof in this case, as in all criminal cases, is upon the state to satisfy the minds of the jury of the guilt of the defendant from the evidence beyond a reasonable doubt, yet the court now says to you that this presumption of innocence, which the law throws around the defendant as a shield and safeguard is not intended to shield from punishment anyone who is in fact guilty, but is simply a humane provision of law to guard against the conviction of any innocent person, and the court further says to you positively that if you believe from the evidence in this

case beyond a reasonable doubt that the defendant is guilty as charged in the indictment, then it is your sworn duty to say guilty by your verdict, regardless of the presumption of innocence and the further fact that the burden of proof is upon the State.''

A similar instruction was analyzed and condemned in Smith v. State, 161 Miss. 430, 137 So. 96. In commenting on the instruction in that case the Court, in its opinion, said: ''The lay-mind, in reading it (the instruction) might get the idea that the jury, in making up their verdict, were not to take into consideration the burden of proof and the presumption of innocence. At first glance the instruction is calculated to convey that impression. We cannot say it was error for the court to give this instruction, but we think that on another trial it should be left out of the case. The instruction is too illusive for the ordinary juror to get hold of and understand its meaning; it is too smart.'' In McLaurin v. State, 205 Miss. 554, 37 So. 2d 8, the Court condemned a similar instruction and cited Smith v. State, supra, as authority for its condemnation. For the reasons stated in the Smith case and in the McLaurin case, we hold that the trial judge erred in granting the above mentioned State's Instruction No. 9.

▆▆ ▆▆ The appellant also complains of the State's Instruction No. 8 in which the court instructed the jury ''that evidence that the witness Mary Ann Aiken made prior statements out of court different from and contradictory to her testimony in court is admissible only to discredit her testimony given in court and not to show the guilt of the defendant.'' It is argued that the instruction is erroneous in that it failed to inform the jury that such contradictory statements must have been material and relevant to the issues involved. We do not approve the instruction in the form stated; but we think the errors complained of were not of such

nature as to require a reversal of the judgment because of the giving of that instruction.

For the errors complained of in the granting of the State's Instructions No. 4 and No. 9, the judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.

*Ethridge, Rodgers, Brady and Patterson, JJ.,* concur.