291 So.2d 177 (1974)
Tony HAMMONS
v.
STATE of Mississippi.
No. 47558.
Supreme Court of Mississippi.
March 4, 1974.
*178 Mills & Perkins, Moss Point, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Special Asst. Atty. Gen., Jackson for appellee.
GILLESPIE, Chief Justice:
Tony Hammons was convicted of robbery by the Circuit Court of Jackson County and sentenced to serve nine years in the penitentiary.
The defendant, together with Thomas Lang, Jimmy Paulk and Horace Eugene Vick, was riding around and drinking intoxicating beverages. They saw three hitchhikers, Earl Wade Lawless, James Howard, and another young man from the Air Force. The defendant stopped his car and picked up the three hitchhikers, after which they all drank some beer provided by defendant and his companions. They got back in the car, took Vick home, then drove to a place on the Pollock's Ferry Road where they got out of the car and drank some more. Defendant and his companions then started beating the boys they had picked up. After defendant, Lang and Paulk began beating the three hitchhikers, two of the hitchhikers escaped, leaving only Earl Wade Lawless. Lawless was beaten until he was unconscious, and he testified that he was then taken to a shed or barn somewhere in the vicinity. The next day a resident of the vicinity where the beating took place found Earl Wade Lawless lying in his garden and called the sheriff's office. Lawless was then taken to the hospital. Upon examination, Lawless was found to be extremely grotesque in appearance; his eyes were swollen completely shut, and his face was discolored, bruised, and had a number of fractures. His entire facial structure was separated from the cranium and held together only by the skin.
Lawless testified that when he and his companions were picked up by the defendant, he, Lawless, had a one dollar bill and a fifty-dollar wristwatch. He testified with considerable equivocation that after *179 he was beaten, he felt someone going in his pockets and also someone taking his watch off his hand, and this occurred before he was taken to the barn or shed.

1.
Defendant raises the question whether the circuit court had jurisdiction to try the case due to the fact that Hammons was a minor at the time of his indictment, trial and conviction.
Section 43-21-31, Mississippi Code Annotated (1972), provides that the youth court has discretion either to retain jurisdiction of a youth charged with a felony and proceed with the case as a delinquency matter, or certify such child for proper criminal proceedings to any court which would have trial jurisdiction of such an offense if committed by an adult.
Proper certification is necessary before the circuit court has jurisdiction to try a minor under the age of eighteen years. Butler v. State, 217 So.2d 525 (Miss. 1969). The precise question before the Court is whether the certification order must be filed in the circuit court before the youth is tried as an adult in that court. The certification question was not raised in the trial court. On the contrary, an affidavit of the official youth court reporter, which was attached to a motion for continuance filed by defendant, stated:
[T]hat on August 6, 1972, a certification proceeding was held in cause No. 3879D on the docket of the Youth Court of Jackson County, Mississippi, in the matter of Tony Hammons, a minor, as to the question of retention of jurisdiction of said minor within the meaning of Section 7185-15 [now § 43-21-31] of the Youth Court Act, all pursuant to a Petition filed therein; ...
After the defendant raised this question in this Court, the State suggested diminution of the record and attached a certified copy of the order of the youth court certifying Tony Hammons to the circuit court for trial. This order is full and comprehensive and is sufficient to correct any deficiency in the record. There is no requirement in the statute that the certification order must be filed in the circuit court prior to trial.

2.
Did the trial court err in refusing to sustain Hammons' objection to impeachment by the State of its own witness, Thomas Lang?
When Thomas Lang, a co-indictee with defendant, was offered as a witness by the State, the State pleaded surprise and was allowed to impeach Lang after proper predicate had been laid. The impeachment consisted of the testimony of Officer Ellsey concerning a statement made by Lang to Ellsey that Lang had seen Tony Hammons rob Lawless. This evidence was admissible for impeachment purposes only under the authority of Hall v. State, 250 Miss. 253, 165 So.2d 345 (1964), wherein it was held that a witness may be cross-examined or impeached by the party calling him when the witness proves to be hostile, provided a proper foundation is laid. We find no error in this respect.

3.
Did the trial court err in sustaining the objection by the State to the introduction into evidence of a transcript of proceedings had in the youth court for the purpose of showing prior contradictory statements by the State's witness, Earl Wade Lawless?
Lawless testified that he felt someone go in his pocket and also slip his watch off his arm after he was beaten but before he was taken to the shed where he was left by the defendant. Defendant sought to impeach Lawless by offering the court reporter's transcript of the evidence taken in the youth court where Lawless testified *180 that he did not know when his money and watch were taken and that he first missed them when he awakened in the shed. No error was committed by the trial court in refusing admission of the transcript of the youth court hearing, because defendant's counsel was permitted to use the transcript to cross-examine Lawless, and Lawless admitted that he had testified in the youth court as shown by the transcript. The defendant obtained every advantage that he could have obtained by introduction of the transcript.

4.
The defendant requested and the court refused a peremptory instruction. Defendant contends that the court erred. Under this assignment of error we will discuss first the sufficiency of the evidence to withstand the peremptory instruction, and also whether the case should be reversed and remanded for a new trial.
Although the evidence shows with the greatest clarity that defendant and his companions were guilty of a grave and unprovoked assault and battery upon Lawless, the testimony on the issue of robbery is not so clear, although we are of the opinion that it was sufficient to make a jury issue. Lawless testified that after he was beaten and before he was carried to some other place and put in a barn or shed, he felt someone go in his pockets and also felt his watch being taken from his arm. Nevertheless, he made a number of contradictory statements as to when he missed his money and watch. The testimony showed that defendant and his companions, Lang and Paulk, were acting in concert insofar as the beating of Lawless was concerned. Paulk, testifying for defendant, stated that just before they left Lawless the three of them held him up and asked if "it hurt too bad." Lawless stated that it did not, and they left him lying there.
Horace Eugene Vick, who was taken home at his own request prior to the assault on Lawless, testified that the defendant came to his house the next day and they went to the place where the beating occurred to get defendant's hat. The defendant told him that the boy who was beaten up had a dollar bill and a pocket knife. This corroboration of Lawless' testimony and the inference which the jury was justified in drawing from the other facts were sufficient to withstand the request for a peremptory instruction.
The question whether this case should be reversed for a new trial raises a much more serious issue. The main evidence against the defendant was the testimony of Lawless, which was self-contradictory. In order to impeach Thomas Lang, the State showed that he pleaded guilty to the crime of robbing Lawless. Lang testified regarding the beating of Lawless and the other two boys but denied that he had seen anybody rob Lawless, and he testified that he had been advised to plead guilty because a robbery had been committed, but claimed he had no knowledge of Lawless being robbed. Then in the absence of the jury, the court set aside Lang's plea of guilty and stated that he would not allow it. The State, through the district attorney, joined by making a recommendation that Lang's plea of guilty be set aside.
Paulk denied any knowledge of the robbery when he took the stand as a defense witness. It was shown on cross-examination that he had also pleaded guilty to the crime of robbery, and in the absence of the jury the court likewise on its own motion set aside Paulk's plea of guilty. The defendant testified that he did not rob Lawless and did not see anyone else rob him. The issue on the question of robbery was a sharp one for the jury to determine. In this situation, the jury retired to consider the defendant's guilt, knowing that Lang and Paulk had already pleaded guilty to the crime of robbery, but without knowing that the court had on its own motion and with the concurrence of the district attorney set aside the guilty pleas of Lang and *181 Paulk. It seems obvious that the jury would not likely have acquitted Hammons, whatever they might have believed about the evidence, since Lang and Paulk were already under a judgment of conviction for the same crime.
For this reason, we are of the opinion that Hammons' conviction should be set aside and the case remanded for a new trial.
Reversed and remanded.
All Justices concur, except WALKER and ROBERTSON, JJ., who dissent.
RODGERS, P.J., and PATTERSON and INZER, JJ., specially concurring.
RODGERS, Presiding Justice (concurring).
I concur in the foregoing opinion although it is apparent to me that the testimony showing robbery is very weak. Nevertheless, the jury is the judge of the weight and worth of the testimony, and it is not for us to weigh the evidence. On the other hand, long experience has taught me to believe that when it is apparent to a jury that a defendant is guilty of something, they are not always particular as to a specific charge being leveled against a defendant. They are reluctant to acquit where their verdict of not guilty will free the defendant from punishment.
In the instant case, where it is overwhelmingly proven that the defendant assaulted and beat the retarded prosecuting witness unmercifully, jurors would not likely have quibbled about the charge in returning a verdict of guilty. It makes a great deal of difference to the defendant, however, whether or not he is convicted of assault and battery or robbery.
To say the least, I believe a new trial is necessary to assure due process in this case.
PATTERSON and INZER, JJ., join.
WALKER, Justice (dissenting):
I feel compelled to dissent from the holding of the majority. The point on which the majority bases a reversal of this case is that the pleas of guilty entered by the coindictees, Paulk and Lang, were set aside by the court after they had testified before the jury and that this information was not conveyed to the jury. This point was not cited as error by appellant, was not mentioned in his brief, nor was it touched on in oral argument before this Court. Therefore, it should not be raised and considered by this Court unless there was a manifest miscarriage of justice. I do not consider the failure of the trial judge to bring this matter to the attention of the jury as error, but, even if it were, it is not such error as to warrant a reversal of the case. The guilt or innocence of appellant was a question for the jury. In this regard the appellant himself admits to the beating of young Lawless, which beating was described in the majority opinion as follows:
Lawless was found to be extremely grotesque in appearance; his eyes were swollen completely shut, and his face was discolored, bruised, and had a number of fractures. His entire facial structure was separated from the cranium and held together only by the skin.
It is nothing short of a miracle that the young victim did not die from these injuries.
After administering the beating to this youth who was completely defenseless from the brutal attack, appellant and his two companions carried the battered body of Lawless to an isolated shed or barn where they left him not knowing and apparently not caring whether he lived or died. When he regained consciousness, his watch had been removed from his arm and his dollar bill was missing. The only reasonable inference to be drawn from these *182 facts is that the persons who administered the beating also took the victim's watch and money, and the jury so found by their verdict of guilty. To hold otherwise is to speculate that some third person, totally lacking in decency and kindness, happened upon Lawless' unconscious body, took his personal belongings and disappeared without a trace. The law relative to this point is discussed in 67 Am.Jur.2d Robbery section 59, pages 62-63 (1973) where it is said:
Under the rule that all the elements of the corpus delicti may be proved by presumptive or circumstantial evidence, which prevails in most jurisdictions, it has been held that the commission of a robbery is sufficiently established by proof that the victim had valuables on his person at the time of being assaulted, beaten, and rendered unconscious, and that they were missing when he regained consciousness.
When the appellant took the stand and denied taking the valuables from Lawless, then the conflict of evidence was a matter to be resolved by the jury. This Court has held many times and more recently in Wilson v. State, 264 So.2d 828 (Miss. 1972) that:
It was the function of the jury to pass upon the credibility of the witnesses and to resolve the issues. Since there was ample evidence, which if believed by the jury, justified the verdict, the verdict will not be disturbed on appeal. (Id. at 830).
Additionally, the trial judge, sitting not only as a judge, but also in the nature of a thirteenth juror, observed the manner and demeanor of the witnesses as they testified, having the benefit of the tone of their voices and the expression on their faces, while this Court has nothing but the coldwritten record before it. From this vantage point, the learned trial judge had two opportunities after all of the evidence was in to hold that the proof did not support the charge of robbery; first, on appellant's request for a peremptory instruction; and, second, upon a motion for a new trial after the jury returned its verdict of guilty. The judge left little room for doubt as to his evaluation of the evidence when he imposed upon appellant a sentence of nine years in the penitentiary. The rulings of a trial judge under these circumstances should not be disturbed unless he is manifestly wrong.
In my opinion, the verdict of guilty was supported by the evidence, was not manifestly wrong, and I am unable to say that there was a miscarriage of justice. Therefore, the judgment of the circuit court should not be disturbed.
ROBERTSON, J., joins in this dissent.