431 So.2d 468 (1983)
Donald Dewayne DAVIS
v.
STATE of Mississippi.
No. 54154.
Supreme Court of Mississippi.
April 27, 1983.
*469 Hermel Johnson, Jackson, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., BOWLING and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Hinds County wherein Donald Dewayne Davis was indicted, tried and convicted for the February 6, 1981, armed robbery of Charlee Prince. Upon conviction, Davis was sentenced to a term of thirty years in the custody of the Mississippi Department of Corrections. Aggrieved of his conviction and sentence, Davis appeals to this Court. We affirm.
On February 6, 1981, Charlee Prince, a truckdriver from Los Angeles, California, was staying at the Tarrymore Motel in Jackson with her husband while repairs were being made to their truck. At approximately 9:00 p.m., Mrs. Prince left the motel to purchase some liquor and groceries. Upon exiting a liquor store on Gallatin Street, Mrs. Prince heard a car door slam. She looked up, whereupon a black man, subsequently identified as the appellant, asked her about a club. Mrs. Prince informed appellant she was not from Jackson and began to unlock the door to her automobile. At this point appellant placed a gun in Mrs. Prince's side, unlocked the door to her vehicle and shoved her into the back seat. Appellant entered the vehicle and then told Mrs. Prince to unlock the other door, whereupon a second man entered the vehicle.
Once all three occupants were inside the vehicle, appellant took Mrs. Prince's purse, dumped everything out, and took $80 which was found therein. She was then instructed to lie down on the back seat where appellant allegedly raped her while the second man drove the vehicle.
The car was subsequently stopped on a dirt road, whereupon the two men searched through the trunk and then reentered the vehicle and drove to the Presidential Hills Subdivision. They stopped in front of a house where appellant exited the car and reentered shortly thereafter with another pistol. Appellant inquired of Mrs. Prince as to her willingness to prostitute for him to which she readily agreed, out of fear. Appellant asked her for a picture; however, *470 Mrs. Prince informed him she did not have one. He then rummaged through her purse, taking various documents of identification.
The car was then driven to a park inside the subdivision where appellant drank some of the liquor and likewise forced Mrs. Prince to drink with him. Appellant was wearing a jacket which resembled a policeman's jacket and was equipped with a badge and a pair of handcuffs. The handcuffs, badge and identification documents taken from Mrs. Prince were subsequently recovered in a search of appellant's home.
Appellant agreed to release Mrs. Prince if she promised to meet him the following day. Mrs. Prince agreed to his demands. They drove to the Red Rooster Convenience Store where appellant told her to get out of the car and walk to the other side and kiss him goodbye like she was his lady. Appellant then returned $10 of her money so she could buy groceries. Mrs. Prince left and returned to the Tarrymore Motel where she informed her husband of what had transpired.
Appellant and her husband left the motel, trying to find the house in Presidential Hills. They waved a police officer down in the area, whereupon other units responded to the call. Mrs. Prince was very upset, crying and shaking. The officers split up trying to locate appellant's house, but to no avail. Mrs. Prince was then taken to the hospital for an examination.
Appellant's version of the events surrounding the evening were somewhat different. Appellant testified he was approached by Mrs. Prince at approximately 8:45 p.m. on February 2, 1981, at the corner of Poindexter and Lynch Streets and asked if he was interested in purchasing marijuana. Appellant informed her he would make the purchase but had to go to his house for the money. Mrs. Prince offered to take him to his house. While at his house, the two had a drink, then he sampled the drug and then they engaged in sexual intercourse at her request. When Mrs. Prince went into the bathroom, appellant went through her purse and removed the $80 he had paid for the drugs. While in the process, some of her identification fell onto the floor which he pushed under the bed when she returned from the bathroom. Mrs. Prince then dropped appellant off at the Red Rooster where she asked him to kiss her. She also told appellant to get in touch with her at the motel to purchase additional marijuana. According to appellant, Mrs. Prince's charges were her way of getting even with him after he ripped her off in the drug deal.
The jury returned a verdict of guilty as charged. Appellant was thereafter sentenced to serve a term of thirty years in the custody of the Mississippi Department of Corrections.
I. Did the trial court err in admitting evidence of crimes other than that as charged in the indictment?
Appellant contends he was denied his right to a fair trial by the interjection of evidence as to the rape of Mrs. Prince while he was on trial for armed robbery.
As a general rule, testimony in a criminal trial should be confined to the charge for which an accused is on trial and the prosecution should not be allowed to aid the proof against the accused by showing he committed other offenses. Eubanks v. State, 419 So.2d 1330 (Miss. 1982); Black v. State, 418 So.2d 819 (Miss. 1982); Tucker v. State, 403 So.2d 1274 (Miss. 1981); Wilborn v. State, 394 So.2d 1355 (Miss. 1981); Massey v. State, 393 So.2d 472 (Miss. 1981); and Gardner v. State, 368 So.2d 245 (Miss. 1979). However, there are exceptions to this rule as stated in Woods v. State, 393 So.2d 1319 (Miss. 1981):
In Gray v. State, 351 So.2d 1342 (Miss. 1977), the Court said:
... It is well settled in this state that proof of a crime distinct from that alleged in an indictment is not admissible against an accused. There are certain recognized exceptions to the rule. Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where *471 it is necessary to identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge. See Smith v. State, 223 So.2d 657 (Miss. 1969), cert. denied, 397 U.S. 1030, 90 S.Ct. 1274, 25 L.Ed.2d 542 (1970); Cummings v. State, 219 So.2d 673 (Miss. 1969); cert. den. 397 U.S. 942, 90 S.Ct. 954, 25 L.Ed.2d 122 (1970). (393 So.2d at 1325).
See also Saik v. State, 387 So.2d 751 (Miss. 1980).
The rule concerning the admissibility of evidence as a part of the res gestae was amply stated in Anderson v. State, 171 Miss. 41, 156 So. 645 (1934), wherein this Court stated:
The proof of another offense is admissible where the main transaction cannot be brought out without showing such other offenses. Simmons v. State, 165 Miss. 732, 141 So. 288, and Mackie v. State, 138 Miss. 740, 103 So. 379, and the authorities therein cited. (171 Miss. at 47, 156 So. at 646).
In Johnson v. State, 416 So.2d 383 (Miss. 1982), we held that evidence of burglary and attempted rape were admissible in a capital murder prosecution as a part of the res gestae where defendant was charged with the killing of a police officer as opposed to felony murder. Where evidence is admissible as a part of the res gestae, it will not be excluded because it may tend to inflame the minds of the jury or would tend to indicate the commission of another crime. Gray v. State, 375 So.2d 994 (Miss. 1979).
While the state first elicited evidence of sexual intercourse between appellant and Mrs. Prince, defense counsel was first to label the act as rape. In any event, such evidence was clearly admissible as a part of the res gestae, the two crimes being so interrelated as to constitute one transaction. Therefore, we find no error in the admission of the evidence concerning the rape of Mrs. Prince.
II. Did the trial court err in overruling appellant's objection and subsequent motion for mistrial when it allowed the state to introduce improper direct testimony from a rebuttal witness for the alleged purpose of impeaching a defense witness by showing he had made a prior inconsistent statement?
On cross-examination of defense witness Musharn Davis, he was shown a written statement dated February 10, 1981, at which time he identified his signature thereon. Davis asserted he remembered talking to officer Patsy Knowles on February 10 but denied that he told officer Knowles about a conversation with his brother (appellant) concerning a white lady. Davis' statement was thereupon marked as an exhibit for identification only.
The state offered officer Knowles as a witness in rebuttal to impeach the testimony of Musharn Davis by showing that he had made a prior inconsistent statement. The trial court, in ruling on the admissibility of such testimony, held that officer Knowles could be examined as to whether or not Musharn Davis gave her a written statement which implicated appellant in this crime, but could not be examined as to the particular details of the statement.
Knowles thereafter took the witness stand as a rebuttal witness for the state, whereupon the following events transpired:
Q. At that time, did Musharn Davis give to you a statement?
A. Yes, he did. He gave me an oral statement and then a written statement.
Q. At that time, did Musharn Davis describe for you a conversation that he had had with his brother, who is the Defendant in this case, Donald Davis?
A. Yes, he did.
BY MR. GILMER: Your Honor, at this point, we would object. We anticipate that she is going to relate some conversation between her and this other individual, an out-of-court statement. We object for all of the reasons that a record has *472 been made of (sic) heretofore and we would ask for a continuing objection without bothering the Court further about it if she's going to be allowed to testify about that.
BY THE COURT: The objection will be overruled. Members of the Jury, this testimony is admitted solely for your consideration in evaluating the testimony of Musharn Davis, who has previously testified, and for that purpose only.
Thank you. Go ahead, Mr. Mayfield.
Q. Detective Knowles, did Musharn Davis describe to you a conversation that he had had with his brother, Donald Davis?
A. Yes, he did.
Q. At that time, did Musharn Davis tell you that his brother, Donald Davis, had admitted to him, Musharn Davis, that on February the 6th, 1981, that he, Donald Davis, and another individual robbed and raped a white lady?
A. Yes, he did.
BY MR. MAYFIELD: No further questions.
BY MR. GILMER: We would object and ask that the answer be stricken and move the Court for a mistrial.
BY THE COURT: The motion will be denied. Anything else, Mr. Mayfield?
BY MR. MAYFIELD: No, sir.
McCormick on Evidence, section 37 (2d Ed. 1972), stated in part:
In 1820 in the answers of the judges in Queen Caroline's Case, it was announced: "If it be intended to bring the credit of a witness into question by proof of anything he may have said or declared touching the cause, the witness is first asked, upon cross-examination, whether or no he has said or declared that which is intended to be proved." Thus was crystallized a practice which was previously occasional and discretionary. Only later and gradually was it almost universally accepted in this country. The purposes of the requirement are (1) to avoid unfair surprise to the adversary, (2) to save time, as an admission by the witness may make the extrinsic proof unnecessary, and (3) to give the witness, in fairness to him, a chance to explain the discrepancy. On the other hand, the requirement may work unfairly for the impeacher. He may only learn of the inconsistent statement after he has cross-examined and after the witness by leaving the court has made it impracticable to recall him for further cross-examination to lay the foundation belatedly. It is moreover a requirement which can serve as a trap since it must be done in advance before the final impeachment is attempted and is supremely easy to overlook.
The requirement applies not only to oral inconsistent statements but also to those in writing. Its application to writings is discussed in an earlier section.
To satisfy the requirement the cross-examiner will ask the witness whether he made the alleged statement, giving its substance, and naming the time, the place, and the person to whom made. The purpose of this particularity is, of course, to refresh the memory of the witness as to the supposed statement by reminding him of the accompanying circumstances.
If the witness denies the making of the statement, or fails to admit it, but says "I don't know" or "I don't remember" then the requirement of "laying the foundation" is satisfied and the cross-examiner, at his next stage of giving evidence, may prove the making of the alleged statement... .
Appellant contends the trial court reversed its original ruling when it allowed the state to elicit from officer Knowles that Davis in his statement to police admitted that appellant told him he had robbed and raped a white lady. The trial court's previous ruling was merely to the effect that Davis' statement was inadmissible; however, the state could elicit whether Davis had implicated his brother in the crime charged without going into the particular details of the statement. This is exactly what the state did when it asked officer Knowles whether Davis admitted in a prior statement that appellant told him he and *473 another individual had robbed and raped a white lady.
In Hall v. State, 250 Miss. 253, 165 So.2d 345 (1964), this Court stated:
"[I]t is also well settled as a rule of evidence that if a witness, upon either direct or cross-examination, testifies to a fact that is relevant to the issue on trial, the adverse party, for the purpose of impeaching his testimony, may show that the witness has made previous inconsistent or conflicting statements either by eliciting such statements upon cross-examination of the witness himself, or by proving them by other witnesses." Commonwealth v. West, 312 Mass. 438, 45 N.E.2d 260. If the witness confesses or admits having made the prior inconsistent statements, ordinarily there is no necessity for further proof, as by the admission of the prior inconsistent written statement. See 58 Am.Jur., p. 430, Witnesses, § 780.
It should be kept in mind, however, that evidence of extra judicial statements made by a witness who is not a party and whose declarations are not binding as admissions is admissible only to impeach or discredit the witness and is not competent as substantive evidence of the facts to which such statements relate, and this rule is equally applicable where a party impeaches his own witness by inconsistent statements. 58 Am.Jur., 421, Witnesses, § 770, and cases cited.
(250 Miss. at 264, 165 So.2d at 350).
In the case sub judice, the jury was instructed both orally and by a written instruction that Knowles' testimony was only to be considered in determining the credibility and truthfulness of Davis' testimony and should not be used as a basis for determining the guilt or innocence of appellant.
While we do not believe the trial court committed error by allowing the state to prove that Davis had made a prior inconsistent statement, we frown on the use of such hearsay evidence when it goes to the ultimate issue to be decided by the jury, being appellant's guilt. We find, however, that no error was committed in this regard.
III. Did the trial court err by denying appellant's motion for a mistrial when the state elicited from appellant that his purpose in buying marijuana from the victim was to sell it at a later time?
Appellant testified in his own defense. He contended that Mrs. Prince sold him two ounces of marijuana for $80 which he removed from her purse when she went into the bathroom. On cross-examination of appellant, the following colloquy occurred:
CROSS-EXAMINATION BY MR. MAYFIELD:
Q. Is it your testimony that you were buying or selling that night?
A. I was buying.
Q. You were buying?
A. Yes, sir.
Q. How much were you buying?
A. Approximately two ounces.
Q. What were you gonna do with it?
A. I was gonna save it.
Q. Save it for what?
A. And sell it and make my money back off it because 
Q. Gonna save it and sell it?
A. Yes 
BY MR. GILMER: Your Honor, we would ask to approach the bench.
(OFF-THE-RECORD DISCUSSION BETWEEN COURT AND COUNSEL.)
BY THE COURT: Members of the Jury, step into the jury room, please.
PROCEEDINGS OUT OF THE PRESENCE OF THE JURY:
BY MR. GILMER: Comes now the Defendant and moves the Court to declare a mistrial herein and in support thereof would show to the Court that the last question and answer could serve only to prejudice the Defendant before this Jury, and the Jury having heard the question and answer, his right to a fair trial would be materially and substantially diminished to the point that we believe a mistrial ought to be declared. We would tell the Court further that making an objection was something we were trying to get on our feet and do prior to the answer and *474 we couldn't and we object to it at this point and ask the Court to declare a mistrial.
BY THE COURT: Do you want to respond?
BY MR. MAYFIELD: Your Honor, I would only say that I believe that's called "opening something up" and I think I have every right in the world to cross examine about his testimony on direct. They're the ones that brought it up.
BY THE COURT: Well, they brought up possession of it, but where do you go as far as what he's going to do with it?
BY MR. MAYFIELD: Your Honor, I  I  I just think that I have every right in the world to ask him about all the facts and circumstances surrounding this matter. By his own testimony, he told about a marijuana transaction and I just think it's proper cross.
BY THE COURT: Well, I'll overrule the motion for a mistrial. Bring the Jury back.
Appellant contends his fifth amendment guarantee against self-incrimination was violated when the state elicited that appellant purchased the marijuana to sell at a later time.
In Hawkins v. State, 224 Miss. 309, 80 So.2d 1 (1955), this Court stated:
Considerable latitude should be allowed in the cross-examination of the accused. A defendant who takes the witness stand in his own behalf waives his constitutional privilege of silence, and the prosecution has the right to cross-examine him upon his evidence in chief as to the circumstances connected with the crime with the same latitude as would be exercised in the case of an ordinary witness. The accused does not, however, by offering himself as a witness in his own behalf, waive his right to object to improper cross-examination designed to elicit incompetent evidence, especially of an incriminating nature. Wharton's Criminal Evidence, Vol. 3, 2202, par. 1325. (224 Miss. at 329, 80 So.2d at 11)
In Akroyd v. State, 107 Miss. 51, 64 So. 936 (1914), this Court found there was no merit to a challenge to certain evidence brought out by the district attorney on cross-examination of the defendant who testified as a witness in his own behalf, where the matter inquired into had been testified to on examination in chief and in the absence of objection being interposed to the cross-examination. In Taylor v. State, 98 So. 106 (Miss. 1923), a murder prosecution, defendant asserted he was armed with a weapon because he had seen one or two mad dogs around on the day of the killing. Complaint was made of certain questions asked defendant relating to the mad dogs and his reason for having the pistol. On appeal, this Court held the district attorney had the right to conduct the examination as he did.
The appellant interjected into his trial the evidence of the marijuana transaction. The state thereafter had a right to explore by permissible cross-examination appellant's evidence in chief as to the circumstances surrounding his defense of the sale of marijuana to appellant by Mrs. Prince. In Reddix v. State, 381 So.2d 999 (Miss. 1980), this Court stated:
From what we have just quoted and delineated from the record it is seen that the matter of the location of the wrench and its identification as being that used in the robbery were matters first injected into the record by appellant on cross examination, and whatever damage there was to appellant's defense was done, or largely done, by appellant. Without further citation of authority the Strong [v. State, 199 Miss. 17, 23 So.2d 750 (1945)] and Miller Transporter [Transporters, Ltd. v. Espey, 187 So.2d 876 (Miss. 1966)] decisions supra are a complete answer to this self-made error and the state did not cause it at all.
Appellee's brief quotes from State v. Apple, 121 N.C. 584, 28 S.E. 469, 470 (1897): "If the defendant goes fishing in the state's waters, he must take such fish as he catches."
We conclude that appellant may not assert this as error.
(381 So.2d at 1009)
*475 Appellant defended the charge against him on the theory that it stemmed from the victim's ill will toward him after he ripped her off in the alleged drug transaction. Because appellant chose to defend himself on this ground, the state had a right to inquire as to the events surrounding the drug deal as well as appellant's motive and purpose in making the drug purchases.
IV. Did the trial court err in refusing instructions D-5, D-8 and D-10?
Instruction D-5 related the following:
The Court instructs the Jury that it is your sworn duty to commence the investigation of this case with the presumption that the Defendant is innocent of the crime with which he is charged. This presumption is not an idle form, but it is a fundamental and important part of the law of the land; and you should act upon this presumption throughout your consideration of the evidence, unless it shall have been overcome by proof of guilt so strong, credible and conclusive as to convince your mind beyond every reasonable doubt that the Defendant is guilty. The law does not require the Defendant to prove his innocence.
Instruction C-2, which was granted by the court, clearly announced the presumption of innocence to which appellant was entitled. A trial court is not required to give instructions which are covered by other instructions although the language may differ. Sadler v. State, 407 So.2d 95 (Miss. 1981). There was no error in the refusal of this instruction.
Instructions D-8 and D-10 were both circumstantial evidence instructions. The present case was far from being a circumstantial evidence case. Where the state's case is not based entirely on circumstantial evidence, the granting of such an instruction is improper. Smith v. State, 394 So.2d 1367 (Miss. 1981). The refusal of these instructions was proper.
Based on the foregoing, appellant's conviction and sentence are hereby affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.